**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

**No. 69 Civ. 200 (DNE).**

United States District Court,
S. D. New York.

Oct. 5, 1974.

Raymond M. Carlson, James I. Serota, Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff.

Charles Waygood, Olwine, Connelly, Chase, O'Donnell & Weyher, Cravath, Swaine & Moore, New York City, for defendant.

## OPINION

EDELSTEIN, Chief Judge.

On April 16, 1973, this court entered an order, designated Special Master Order No. 1, appointing special masters pursuant to Fed.R.Civ.P. 53 for the purpose of making recommendations to the court regarding the validity of claims of privilege asserted by the parties. The history of the masters' proceedings with respect to documents withheld by defendant International Business Machines Corporation (IBM) from production to plaintiff on the basis of claims of attorney-client privilege or attorney-work product immunity pursuant to Fed.R. Civ.P. 26(b)(3) is detailed in this court's

opinion of June 27, 1974 and need not be repeated here. As a result of the June 27 decision, the Masters, on July 9, 1974, submitted a Preliminary Report and invited written comments from the parties. Plaintiff, by its letter to the Masters of July 16, indicated that it had no comments. Defendant, on July 16, submitted its "Comments with Respect to the Preliminary Report of Special Masters". On July 24 the Masters issued a revised "Final Report Re (a) Glossary and (b) Revision of IBM Claims (hereinafter referred to as Final Report). That Report is attached hereto as Appendix A. By motion dated August 5, 1974, IBM moved for an order amending and modifying the Final Report and on August 15 the Government filed a response in opposition to the motion. It is that motion which is the subject of this opinion.

In reviewing the Final Report, the court is guided by two considerations. To the extent that the Final Report is the·result of findings and conclusions reached by the court in its June 27 opinion, the Report must be analyzed to assure its conformity to that opinion. To the extent that the Masters have formulated conclusions of law, the Report must be reviewed as to the correctness of the legal propositions asserted.

*The Masters' Report*

The Masters recommended that:

1. IBM furnish to each of us (a) a directory of personnel, other than attorneys, referred to in the documents or a general directory from which such persons can be identified, and (b) a glossary of groups and abbreviations referred to in the documents and not otherwise identified, and that

2. IBM review the documents in light of the Court's opinion of June 27, 1974 and the categories of *not* privileged documents set forth below. Documents which survive such review will be resubmitted to the Masters for rulings; documents which do not, are to be furnished to plaintiff without further order of the Master to whom the document has been assigned except that as to documents with respect to its claim of privilege, IBM may present to the Master a list of such documents setting forth (a) the document number, (b) a statement indicating which category(ies) below the document falls within, and (c) a statement as to why the document is deemed privileged. The Master will then issue a final report, from which appeal may be taken.

The recommended categories of non-privileged documents as to which attorney-client privilege is claimed, in brief, are as follows:

1. Where the subject of communication is company policy

2. Where the document is not intended primarily for the purpose of securing legal advice

3. Where a reading of the document in question does not reveal a communication of confidential information

4. Where a communication is not intended to remain confidential, including a communication from or to an attorney that is intended for transmission to third parties without legal approval.

With respect to claims of work product immunity, the Masters' guidelines, pursuant to the June 27 opinion, make not-privileged all documents which do not disclose that they were prepared for use in this litigation.

The court's opinion of June 27, 1974 directed the Masters to use the so-called control group theory in determining the validity of IBM's claims of attorney-client privilege. United States v. International Business Machines Corp., 69 Civ. 200 (S.D.N.Y., filed Jan. 17, 1969) (opinion filed June 27, 1974 at 178–179). Subsequently, the Government submitted a list of persons whom it believes are within the IBM control group. The pro-

cedure established by the Masters for applying the control group theory is as follows:

As to each document resubmitted by IBM in which all of the originator(s), addressee(s) and copyee(s) are not within the IBM control group list submitted by the Government, IBM shall submit one or more affidavits of appropriate IBM official(s) setting forth the factual basis for IBM's claims that the persons not within the Government's list are within the control group.

*IBM's Objections*

■ IBM first objects to the proceedure recommended by the Masters for the disposition of those documents which fall into the categories of non-privileged material. It argues that "the provision in question implies the absence of a 'final order' for documents not subject to an appeal to this Court." Defendant's Memorandum in Support of Its Appeal From and Objections to the Final Report of Special Matters Re (a) Glossary and (b) Revision of IBM Claims [hereinafter referred to as Defendant's Memorandum]. The court sees no such ambiguity in the procedure recommended by the Masters. All documents as to which IBM has claimed privilege have previously been identified and listed. The Masters' Report, if adopted by the court, contains a clear direction that certain of those documents, *i. e.*, those which do not survive review in light of the Masters' Report, be furnished to plaintiff without *further* order. Any further order is unnecessary because the Report in itself constitutes a final order as to those documents. It is only as to those documents with respect to which IBM wishes to appeal to the court that further Masters' proceedings and therefore further orders are necessary. Accordingly, defendant's first objection is overruled.

■ Defendant's second objection to the Masters' procedure involves this court's holding, in its June 27 opinion,

that work product immunity will attach only to materials prepared for use in this litigation. IBM complains that:

Under the Court's June 27 Opinion and the proposed procedure, work product materials generated exclusively in connection with another case, such as Xerox v. IBM, would have to be turned over to the Department of Justice without review by the Court. In view of the Court's and the Department's prior interpretations of the Publicity In Taking Of Evidence Act, that material could then be obtained freely by Xerox's counsel *notwithstanding* prior orders of this Court preliminarily protecting such material from disclosure . . . .

Defendant's Memorandum at 5.

IBM therefore seeks to protect the confidentiality of any such material produced to the Government in this litigation. In the first instance it should be noted that such material would become a matter of public record only if the Government, having received from IBM documents as to which work product status has been claimed in another case, sought to use that material at trial or in the course of a deposition. In either case IBM will have ample notice and opportunity at that time to seek protective relief. Similarly, should the other party in the litigation for which the material was allegedly prepared seek to discover the documents from the Government, IBM can seek protective relief from the court in that case. Thus, defendant's request here is premature and there is no reason for the court to alter the Masters' recommended procedure.

■ IBM objects to what it sees as the Masters' implicit adoption of the control group list submitted by the plaintiff. The Masters' recommended procedure, however, in no way confines itself to plaintiff's list. The Masters have provided a mechanism whereby IBM may demonstrate the factual basis for including additional persons in the control

group. This is the approach apparently contemplated by Judge Kirkpatrick in City of Philadelphia v. Westinghouse Electric Corp., 210 F.Supp. 483 (E.D.Pa. 1962), and this court sees no reason for believing that the Masters' procedure will not result in a correct application of the control group theory. Therefore, defendant's objection to the Masters' proposed procedure with respect to the application of the control group theory is overruled.

■ IBM's next objection is to the Masters' first category of non-privileged material, i. e., communications the subject of which is company policy. IBM argues that the phrase "company policy" is ambiguous and should be revised to read "business policy." IBM asserts that "it should be made clear that a lawyer's legal advice about the business of his client (as opposed to business advice about that business) is privileged." Defendant's Memorandum at 12. The court does not disagree with IBM's position that the attorney-client privilege extends to legal but not to business advice; nor does it disagree with defendant's argument that the critical factor in determining whether a document is protected by the attorney-client privilege is whether legal, as opposed to business, advice is sought and given. However, the Masters here are not concerned with the distinction between business advice and legal advice. The Masters' examples of what is included in this category, e.g., sales manuals, administrative forms, and industry news letters, make it clear that this category refers not to business advice as defendant suggests but rather to that area commonly known as "company policy," i. e., those general goals and considerations which guide an enterprise in the conduct of its affairs. As a general rule, communications relating to company policy do not meet the requirements of the attorney-client privilege and so are not privileged. The Final Report contains neither an incorrect statement of law nor an ambiguity

on this point. Accordingly, there is no need for the court to modify the Report with respect to this category.

IBM's next objection is to the Masters' guidelines which exclude from the category of privileged material documents which are not intended primarily for the purpose of securing legal advice or which do not reveal a communication of confidential information. For purposes of clarity, the relevant portions of the Final Report are set forth here.

2. Where a document is not intended primarily for the purpose of securing legal advice. *Zenith Radio Corp.* v. *Radio Corp. of America,* 121 F.Supp. 792, 794 (D.Del.1954). See also, *U. S.* v. *U. S. Shoe Corp.,* 89 F. Supp. 357, 360; *Colton* v. *U. S.,* 306 F.2d 633, 638 (2d Cir. 1962); *NLRB* v. *Harvey,* 349 F.2d 900, 905–906 (4th Cir. 1965). This category includes all documents requesting simultaneous review of a given problem or practice by non-legal as well as legal personnel, *cf. U. S.* v. *Aluminum Co. of America,* 193 F.Supp. 251, 253 (N.D.N.Y.1960). A lawyer's response to any request not intended primarily for the purpose of receiving legal advice will not be deemed confidential or privileged even as to that specifically legal portion of the response since the privilege only applies to a lawyer's communication which would have the effect of revealing a confidential communication from the client. *U. S.* v. *Silverman,* 430 F.2d 106, 122 (2nd Cir. 1970).

3. Where a reading of the document in question does not reveal a communication of confidential information. *U. S.* v. *U. S. Machinery Corp, supra* at 360 (privilege does not encompass reports or comments "on information coming from persons outside the corporation or from public documents, or [which] are summaries of conferences held with or in the presence of outsiders.") See also *Colton* v. *U. S., supra* at 639.

The first issue posed by this objection is whether, to be privileged, a communication from a lawyer to a client must reveal a confidential communication from the client to the lawyer. The oft-quoted essential elements of the attorney-client privilege were enunciated by Judge Wyzanski in United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358 (D.Mass.1950).

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) *the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c)* for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. [emphasis added]

It is hornbook law that the purpose for the attorney-client privilege is to encourage the client to make full disclosure to his attorney. McCormick, Evidence (1954) § 92 at 185; Hunt v. Blackburn, 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488 (1888). Thus, the focus of the privilege must be on protecting confidential information revealed to the lawyer by the client. Judge Wyzanski clearly recognized this element of the privilege in requirement (3) of his formulation. And in resolving the question of the extent to which the lawyer's communications to the client are privileged, the courts have focused on the need to protect the confidentiality of what the client revealed to the lawyer.

In compelling an attorney to reveal the identity of a client, the Second Circuit wrote "the authorities are clear that the privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence." Colton v. United States, 306 F.2d 633, 637 (2d Cir. 1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). The court in that case also ordered the attorney to produce certain documents, saying "the attorney-client privilege protects only those papers prepared by the client for the purpose of confidential communication to the attorney *or by the attorney to record confidential communications . . . .* [emphasis added] 306 F.2d at 639. The Second Circuit elaborated on this problem in United States v. Silverman, 430 F.2d 106 (2d Cir. 1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971). In that case the court compelled discovery of that portion of an attorney's report which contained a description of union minutes which were a matter of public record. The court said:

The privilege as commonly formulated refers to a confidential communication *from* the client *to* the attorney. [citations omitted] Wigmore states that the reason for bringing communications from the attorney to the client within the privilege is to prevent adopted admissions or inferences of the tenor of the client's communication. [citation omitted] The purpose of the privilege, the encouragement of full disclosure to the attorney in procuring legal advice, implies that a communication from an attorney is not privileged unless it has the effect of revealing a confidential communication from the client to the attorney.

430 F.2d at 122.

This approach was also adopted by Judge Wyzanski in the *United Shoe Machinery* case. He wrote:

It follows that in so far as these letters to or from independant lawyers

were prepared to solicit or give an opinion on law or legal services, *such parts of them are privileged as contain, or have opinions based on, information furnished by an officer or employee of the defendant in confidence and without the presence of third persons.* [emphasis added]

89 F.Supp. at 359.

■ IBM has cited a series of cases which assertedly stand for the proposition that all communications made by the attorney to the client are privileged. However, a careful reading of these cases suggests that any more expansive protection is based on the desire to protect confidential communications made by the client to the lawyer. *See, e. g.,* Schwimmer v. United States, 232 F.2d 855, 863 (8th Cir. 1956) ("the protection against disclosure . . . [extends] . . . to the communications made by the attorney to him [the client] related to the confidence."); 8 in 1 Pet Products, Inc. v. Swift & Co., 218 F.Supp. 253 (S.D.N.Y.1963) ("The law is settled that the advice of counsel based upon the confidential communications of a client is privileged"); Georgia-Pacific Plywood v. United States Plywood Corp., 18 F.R.D. 463, 464 (S.D.N.Y. 1956) ("Since communications by the attorney to the client might reveal the substance of a client's communication they are also within the privilege"). In light of the clear guidance from the Second Circuit on this matter and because the approach recommended by the Masters coincides with the purpose of the attorney-client privilege, this court is constrained to reject defendant's formulation of the attorney-client privilege as it applies to communications from lawyers to their clients. This court will abide by the view that such communications are privileged only to the extent that they reveal confidential information communicated by the client to the lawyer. Accordingly, the proper focus of the Masters' inquiry must be whether or not the document as to which

privilege is claimed can be said to reveal such a communication.

■■ IBM also objects to the Masters' recommendation that no protection be afforded a document not intended primarily for the purpose of securing legal advice. One of the essential elements of the attorney-client privilege is that the attorney be acting as attorney, that the communication be made for the purpose of securing legal services. It has been recognized, and this court does not dispute, that in the process of giving legal advice, an attorney may incorporate what Judge Wyzanski called "relevant nonlegal considerations" without losing the privilege of nondisclosure. *See* United States v. United Shoe Machinery Corp., 89 F.Supp. 357 (D.Mass. 1950). However, this does not mean that the privilege attaches to incidental legal advice given by an attorney acting outside the scope of his role as attorney. " 'Acting as a lawyer' encompasses the whole orbit of legal functions. When he acts as an advisor, the attorney must give predominantly legal advice to retain his client's privilege of non-disclosure, not solely, or even largely, business advice." Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792, 794 (D.Del. 1954). Thus, while a document in appropriate circumstances may be privileged only in part, the Masters are correct in recommending that in the case where a lawyer responds to a request not made primarily for the purpose of securing legal advice, no privilege attaches to any part of the document.

In the category of documents not intended primarily for the purpose of securing legal advice, the Masters have included documents requesting simultaneous review of a given problem by nonlegal as well as legal personnel. IBM argues, "In a situation where several persons, including a lawyer, are asked for advice upon a particular course of conduct, the communication, *as far as the lawyer is concerned,* is one seeking legal advice, and thus *his* response would

be privileged." Defendant's Memorandum at 17. In support of its position, IBM relies on United States v. Aluminum Co. of America, 193 F.Supp. 251 (N.D.N.Y.1960), a case in which the court suggested that the attorney-client privilege attached to the original of a document sent to corporate counsel but did not protect a copy of that document sent to the president of the corporation in response to his request for information.

■ To assert, as IBM does, that what is essentially a single document can be considered "primarily legal" as to one copy though admittedly not as to another is to distort the proper focus of the inquiry. The question of whether a document was prepared primarily to seek legal advice must be resolved by examining the circumstances under which the document was prepared. If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice. Therefore, one of the critical elements of the attorney-client privilege is absent at the outset. The aspect which deprives the document of protection is inherent in the circumstances of its creation and clearly is not remedied by the later disposition of any copy of the document. The Masters are correct in asserting that no protection attaches to a document prepared for simultaneous review by legal and non-legal personnel. Defendant's objection is overruled.

*Conclusion*

Having reviewed the Final Report and the defendant's objections thereto, the court has concluded that the legal propositions asserted by the Masters are correct. Therefore, the recommendations contained in the Final Report of Special Masters Re (a) Glossary and (b) Revision of IBM Claims (July 24, 1974) are accepted. Defendant is directed to comply with the procedures set forth in the Final Report for reviewing the documents as to which it has claimed privilege and submitting them to plaintiff or the Masters as appropriate.

So ordered.

## APPENDIX A

### FINAL REPORT OF SPECIAL MASTERS RE (a) GLOSSARY AND (b) REVISION OF IBM CLAIMS

### INTRODUCTION

The experience of the Masters in reading documents indicates that a substantial number fall in categories listed below under "Attorney-Client" which, in the opinion of the Masters, are not privileged. Moreover, Chief Judge Edelstein's decision of June 27, 1974, holding that CS&M III and IV and OBP were business rather than legal groups, imposes on IBM the burden of proving specific claims of privilege as to individual documents generated by said groups. It also disposes of all work-product claims except those relating to documents prepared for the instant case.

Moreover, there are in the various documents and listings names of individuals and groups and abbreviations which are not otherwise identified or explained.

### RECOMMENDATION

We, therefore, recommend to the Court that

1. IBM furnish to each of us (a) a directory of personnel, other than attorneys, referred to in the documents or a general directory from which such persons can be identified, and (b) a glossary of groups and abbreviations referred to in the documents and not otherwise identified, and that

2. IBM review the documents in light of the Court's opinion of June 27, 1974 and the categories of *not* privileged documents set forth below. Documents which survive such review will be resubmitted to the Masters for rulings; documents which do not, are to be furnished to

plaintiff without further order of the Master to whom the document has been assigned except that as to documents with respect to which IBM wishes to appeal to the District Court with respect to its claim of privilege, IBM may present to the Master a list of such documents setting forth (a) the document number, (b) a statement indicating which category(ies) below the document falls within, and (c) a statement as to why the document is deemed privileged. The Master will then issue a final report, from which appeal may be taken.

The categories are as follows:

### Attorney-Client

Communications will not be deemed privileged if they come within any one of the following categories:

1. Where subject of communication is company policy, including:

a. Discussions of pricing, marketing and budgeting.

b. Communications relating to administrative forms, catalogs, letters, customer letters, branch manager letters, industry news letters, blue letters, press releases, branch office manuals, sales manuals, business conduct booklets, hiring practices, instruction letters, regional manager letters, executive reports, advisory staff memos, corporate instructions, announcements, organization letters, proposed legislation and standard contracts, as well as all proposed revisions, drafts, interpretations and applications thereof.

c. Announcements or requests that policy areas be studied.

d. Discussions of the apportionment of responsibility within the IBM administration.

e. Communications concerning settlement and contract negotiations.

2. Where a document is not intended primarily for the purpose of securing legal advice. Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792, 794 (D.Del.1954). See also, United States v. United States Shoe Corp., 89 F.Supp. 357, 360; Colton v. United States, 306 F.2d 633, 638 (2d Cir. 1962); NLRB v. Harvey, 349 F.2d 900, 905–906 (4th Cir. 1965). This category includes all documents requesting simultaneous review of a given problem or practice by non-legal as well as legal personnel, cf., United States v. Aluminum Co. of America, 193 F.Supp. 251, 253 (N.D.N.Y. 1960). A lawyer's response to any request not intended primarily for the purpose of receiving legal advice will not be deemed confidential or privileged even as to that specifically legal portion of the response since the privilege only applies to a lawyer's communication which would have the effect of revealing a confidential communication from the client. United States v. Silverman, 430 F.2d 106, 122 (2nd Cir. 1970).

3. Where a reading of the document in question does not reveal a communication of confidential information. United States v. United States Machinery Corp., supra, 89 F.Supp. at 360 (privilege does not encompass reports or comments "on information coming from persons outside the corporation or from public documents, or [which] are summaries of conferences held with or in the presence of outsiders.") See also Colton v. United States, supra, 306 F.2d at 639. This category includes:

a. A communication based upon complaints, proposals, requests or other communications from third parties or discussions with third parties.

b. Reports regarding activities of third parties or discussions with third parties.

c. Requests for specific legal action, such as contract drafting or research, where it is not evident that the request discloses confidential information.

d. Requests for legal advice made on the basis of information contained in records and other material generated for predominantly business purposes.

e. Legal opinions which do not reveal a confidential communication from the client to the attorney, including discussions of legislation, judicial decisions, status reports of activities by lawyers or non-lawyers, lawyer "high light reports", reports on complaint resolutions, financial damage assessments and letter 112 status reports (e. g., Beitzel, AA 84(4)).

4. Where a communication is not intended to remain confidential, including a communication from or to an attorney that is intended for transmission to third parties without legal approval.

5. As to each document resubmitted by IBM in which all of the originator(s), addressee(s) and copyee(s) are not within the IBM control group list submitted by the Government, IBM shall submit one or more affidavits of appropriate IBM official(s) setting forth the factual basis for IBM's claims that the persons not within the Government's list are within the control group.

### Work-Product

All documents which do not disclose that they were prepared for use in this litigation will not be privileged as work-product.

    (s) Jesse Climenko
    (s) Joseph M. McLaughlin
    (s) Bernard S. Meyer
          Special Masters

### ADDENDUM TO OPINION OF
October 5, 1974

On page 211 of its opinion of October 5, 1974 this court quoted language from United States v. Silverman, 430 F.2d 106, 122 (2d Cir. 1970). In a subsequent opinion, cited by neither party, the Second Circuit Court of Appeals, on rehearing, deleted the quoted language, United States v. Silverman, 439 F.2d 1198 (2d Cir. 1970), but found that the attorney's report at issue in the original opinion was nevertheless properly received in evidence. Thus, the deletion has no substantive effect on this court's disposition of defendant's motion. The law remains clear that a communication from an attorney to a client is privileged only insofar as it has the effect of revealing a confidential communication from the client.

In light of the foregoing, this court's opinion of October 5, 1974 is modified as follows: That portion of the opinion, starting on page 211, which begins with "The Second Circuit elaborated on this problem in United States v. Silverman . . ." and extends through the end of the *Silverman* quotation on page 211 is deleted. In its place the following language is inserted: "The Second Circuit again confronted this problem in United States v. Silverman, 430 F.2d 106, modified, 439 F.2d 1198 (2d Cir. 1970), *cert. denied*, 402 U.S. 953 [91 S.Ct. 1619, 29 L.Ed.2d 123] (1971). In that case the court compelled discovery of that portion of an attorney's report which contained a description of union minutes which were a matter of public record, saying that the portion of the attorney's report in question 'did not reveal a confidential communication.' 430 F.2d at 122."

This court's opinion of October 5, 1974 is revised as set forth above. So ordered.