**ABB KENT–TAYLOR, INC., Plaintiff,**

v.

**STALLINGS AND CO., INC., Thomas U. Stallings and Barbara J. Stallings, Defendants.**

No. 94–CV–6117T.

United States District Court, W.D. New York.

Nov. 21, 1996.

David Hoffberg, Nixon, Hargrave, Devans & Doyle, L.L.P., Buffalo, NY, for plaintiff.

Mark J. Moretti, Phillips, Lytle, Hitchcock, Blaine & Huber, Rochester, NY, for defendants.

## DECISION AND ORDER

FELDMAN, United States Magistrate Judge.

By Order dated June 12, 1996 (Docket # 41), the Honorable Michael A. Telesca referred this matter to me for, *inter alia*, supervision of all pretrial discovery disputes. Pending before this Court are defendants' motion to compel (Docket # 49) and plaintiff's cross-motion to compel (Docket # 55).

## *FACTUAL BACKGROUND*

This diversity lawsuit arises out of a dispute between plaintiff, ABB Kent–Taylor (hereinafter "ABB"), and Stallings and Company (hereinafter "Stallings") regarding an aborted sale of assets from Stallings to ABB. In early 1994, Stallings and ABB were negotiating various agreements relating to the asset sale, which would, if executed, resolve and settle claims the parties had against each other.

In negotiating the asset sale agreement, ABB utilized their in-house counsel, Eugene Madara, Esq. The present discovery dispute is based on Stallings' claim that ABB has improperly invoked the attorney-client privilege to shield from disclosure non-legal communications involving their in-house counsel. The disputed evidence consists of (1) Mr. Madara's recommendation to ABB's President regarding whether to proceed with the asset sale and (2) specific documents described in ABB's privilege log that Stallings claim are being improperly withheld from discovery. ABB has cross-moved for Stallings to supply a privilege log pursuant to Federal Rule of Civil Procedure 26(b)(5). Oral argument was heard by this Court on November 18, 1996.

## *DISCUSSION*

***The Attorney–Client Privilege:*** Pursuant to Rule 501 of the Federal Rules of Evidence, substantive questions of privilege in this diversity action are governed by New York State law. *See Application of American Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir.1989) (in a diversity case the existence of a privilege is to be determined by reference to state law); *Bowne of New York City. Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470–471 (S.D.N.Y.1993) (under Fed.R.Evid. 501, where action involves state law claims and defenses, it is state law which defines the elements of the attorney-client privilege). New York State recognizes the attorney client privilege via statute.[1] The privilege "is intended to foster openness between counsel and client so that legal problems can be thoroughly and accurately analyzed." *Mat-*

---

1. Section 4503 of New York's Civil Practice Law and Rules provides, in relevant part: "Unless the client waives the privilege, an attorney or his employee, or any other person who obtains without knowledge of the client evidence of a confidential communication made between an attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication [in any proceeding]...." N.Y. CPLR § 4503(a).

*ter of Vanderbilt*, 57 N.Y.2d 66, 76, 453 N.Y.S.2d 662, 439 N.E.2d 378 (1982). *Priest v. Hennessy*, 51 N.Y.2d 62, 67–68, 431 N.Y.S.2d 511, 409 N.E.2d 983 (1980) (privilege exists "to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment").

■ **Application of the Privilege to Corporate Counsel:** The attorney-client privilege applies to communications with attorneys, regardless of whether the attorney is outside counsel or corporate staff counsel. *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981). "A corporation's communication with counsel, no less than the communications of other clients with counsel, are encompassed within the legislative purposes of CPLR 4503, which include fostering uninhibited dialogue between lawyers and clients in their professional engagements, thereby ultimately promoting the administration of justice." *Rossi v. Blue Cross and Blue Shield of Greater New York*, 73 N.Y.2d 588, 592, 542 N.Y.S.2d 508, 540 N.E.2d 703 (1989). While CPLR 4503 refers to communications by clients to their attorney, the privilege plainly extends to the attorney's own communication to the client. *Id.*

Privilege issues with respect to communications between in-house corporate counsel and the corporate client have proven to generate thorny discovery and disclosure problems for the courts. In-house counsel often serve their corporate employer in mixed business-legal roles. Indeed, "[t]heir day-to-day involvement in their employer's affairs may blur the line between legal and non-legal communications" and thus require Judges to "cautiously and narrowly" apply the privilege in cases involving corporate staff counsel "lest the mere participation of an attorney be used to seal off disclosure." *Rossi, supra* at 592, 593, 542 N.Y.S.2d 508, 540 N.E.2d 703. *See U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F.Supp. 156, 160 (E.D.N.Y. 1994) ("Defining the scope of the privilege for in-house counsel is complicated by the fact that these attorneys frequently have multi-faceted duties that go beyond traditional tasks performed by lawyers").

The present discovery dispute pays tribute to the nettlesome issues which occur when corporate counsel negotiate business transactions with third parties on behalf of their employer and then offer confidential legal advice to the corporate client with respect to the substance of those negotiations and the legal issues implicated. There is no bright-line test for distinguishing between business advice and legal advice, except to say the latter is protected from disclosure while the former is not. Resolving these often vexing issues is necessarily fact specific and the particular communication in dispute must be examined closely. For the attorney-client privilege to apply, the communication "must be *primarily or predominantly of a legal character.*" *Spectrum Systems Intern. Corp. v. Chemical Bank*, 78 N.Y.2d 371, 378, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991) (emphasis added). *See United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F.Supp. at 160 ("Needless to say, the attorney-client privilege attaches only to legal, as opposed to business services"); *United States v. International Business Machines Corp.*, 66 F.R.D. 206, 210 (S.D.N.Y.1974) ("[T]he critical factor in determining whether a [communication] is protected by the attorney-client privilege is whether legal, as opposed to business advice is sought and given"). The overlap between "business" advice and "legal" advice requires a pragmatic approach. "The mere fact that business advice is given or solicited does not.. automatically render the privilege lost: where the advice given is predominantly legal, as opposed to business, in nature the privilege will still attach." *United States v. Davis*, 131 F.R.D. 391, 401 (S.D.N.Y.1990).

It is within this legal framework that Stallings' motion to compel must be considered.

***Disclosure of In–House Counsel's Advice:*** The facts leading up to the cancellation of the asset transfer between ABB and Stallings are adequately set forth in counsels' submissions as well as Judge Telesca's decision adjudicating the parties' cross-motions for summary judgment (Docket # 31) and will not be repeated here. Suffice it to say that

the negotiations occurred over the course of months and involved a myriad of complex legal and business issues.

The negotiations apparently came to a head in early March, 1994 when ABB set a deadline for consummation of the transaction. Eugene Madara, Esq., chief in-house counsel to ABB during the relevant time period, was negotiating the asset transfer on behalf of his corporate employer. Madara's discussions were often directly with Mr. Stallings himself, a procedure which met with the approval of Stallings' own counsel. According to plaintiff, as the deadline approached a variety of crucial matters remained unresolved, including issues related to indemnification of potential violations of environmental laws, Stallings' alleged repudiation of a release agreement, Stallings' objection to the creation of a separate "shell" corporation to accept the acquisition and whether Stallings had paid taxes in States in which he was conducting business.

On the evening of March 9, 1994, Madara spoke to Richard Keane, ABB's President, by telephone and made an oral recommendation to Keane on whether or not to close the transaction the following day. The next morning Madara notified Stallings that ABB had decided not to close the asset transfer and that the deal was off. On March 11, 1994 ABB commenced the instant lawsuit against Stallings.

The crux of the present discovery dispute is Stallings' insistence that Mr. Madara be compelled to disclose the substance of the oral recommendation he made to Mr. Keane. *See* Affidavit of Stephanie Schaeffer dated September 26, 1996 at ¶ 8. Recognizing that there were multiple legal issues which logically would have been discussed during the phone conversation between Keane and Madara, Stallings' counsel have narrowed their interest in the conversation to communications regarding Madara's assessment of Stallings' "credibility" or "trustworthiness". Defense counsel asserts that if Madara's recommendation to Keane was based on Madara's "character assessment of Thomas Stallings' willingness to abide by the terms of the agreement," such advice would be *business* advice and not *legal* advice. *Id.* at ¶ 12.

According to defense counsel, "Mr Madara's statements and comments to Mr. Keane regarding the 'trustworthiness' of Mr. Stallings are critical to this case." Affidavit of Mark J. Moretti dated November 13, 1996 at ¶ 6.

ABB responds to this motion to compel by providing affidavits of both Mr. Madara and Mr. Keane. In his affidavit, Madara admits that during the course of the negotiations he did form a negative impression of Mr. Stallings. While Madara testified freely at his deposition about his "impressions" of Stallings, he avers that his "analysis of ABB's legal position" as expressed to Keane is privileged. Affidavit of Eugene E. Madara, Esq. dated November 5, 1996 at ¶ 11–12. Similarly, in his affidavit Keane asserts that "with all due respect to Mr. Madara," he never sought or received business advice from Madara with regard to the "Stallings matter". Affidavit of Richard Carens Keane Jr., dated November 4, 1996 at ¶ 8.

■ Based on the foregoing, as well as the representations made by ABB's counsel during oral argument of the motion to compel, this Court senses the dispute over what Madara said to Keane may be "much ado about nothing" and that Mr. Madara's ultimate recommendation to Mr. Keane had little to do with a "character assessment" of Mr. Stallings. Nevertheless, even assuming arguendo that Madara mentioned his assessment of Stallings' credibility or trustworthiness as one of several reasons not to close the deal the following day, I believe the advice would still be subject to the attorney-client privilege.

In giving advice to a client, the role of an attorney is certainly not restricted to citing cases and espousing legal theories. The record here indicates the negotiations leading up to the cancellation of the closing were protracted and, at times, acrimonious. Numerous legal issues including potential environmental law violations, tax liabilities, promissory notes and releases from liability were being discussed and negotiated by the parties. Some litigation had already commenced between ABB and Stallings and the possibility of more lawsuits loomed depending on the outcome of the asset transfer.

■ Often intertwined with legal advice as to substantive issues are counsel's strategic assessment of alternative courses of action available to the client. In this case such legal strategizing could logically include counsel's assessment as to whether a party to a potential contract has demonstrated good faith and fair practice in the discussions leading up to the consummation of the "deal." Implementation of contractual obligations often depends on the good-faith of the parties to the contract. When a credibility assessment is part and parcel of a lawyer's legal opinion, such an assessment is no less legal advice than a case citation or a legal theory. That a communication "does not reflect legal research is not determinative, where the communication concerns legal rights and obligations and where it evidences other professional skills such as a lawyer's judgment and recommended legal strategies." *Rossi v. Blue Cross,* 73 N.Y.2d at 594, 542 N.Y.S.2d 508, 540 N.E.2d 703. A lawyer's advice to his client "does not spring from lawyers' heads as Athena did from the brow of Zeus." *In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir. 1984). Rather, it is an amalgamation of education, knowledge, experience and legal wisdom which counsel may draw upon to give a frank and unconstrained opinion. That is the essence of effective legal representation. "The [attorney-client] privilege is not lost merely by reason that it also refers to certain non-legal matters. (citations omitted). Indeed, *the nature of a lawyer's role is such that legal advice may also include reference to other relevant considerations." Rossi v. Blue Cross,* 73 N.Y.2d at 594, 542 N.Y.S.2d 508, 540 N.E.2d 703. (emphasis supplied). See *United States v. IBM,* 66 F.R.D. at 212 ("It has been recognized, and this court does not dispute that in the process of giving legal advice, an attorney may incorporate ... relevant nonlegal considerations without losing the privilege of non-disclosure") (internal quotation marks omitted)

Mr. Madara's legal advice to Mr. Keane on *whether to consummate the closing,* even if such advice was based in part on Madara's assessment of Mr. Stallings' credibility or trustworthiness would, in my view, be privileged. Accordingly, ABB's motion to compel the continued deposition of Eugene Madara, Esq. so as to further inquire into this area is **denied.**

***Disclosure of Documents:*** Stallings seeks disclosure of nine specific documents listed on ABB's privilege log. *See* Fed.R.Civ.P. 26(b)(5). The documents were created in either 1993 or 1994 and appear from the privilege log to be relevant to the claims made in ABB's complaint. Stallings also seeks disclosure of a redacted portion of the minutes of the February 15, 1996 meeting of ABB's Board of Directors. According to Madara, the redacted portion concerns "legal advice" Madara gave the Board "relating to the new potential relationship between my client [ABB] and Stallings." Madara Affidavit at ¶ 25.

"[W]hether a particular document is or is not protected [by the attorney-client privilege] is necessarily a fact-specific determination (citation omitted), most often requiring *in camera* inspection." *Spectrum Systems v. Chemical Bank,* 78 N.Y.2d at 378, 575 N.Y.S.2d 809, 581 N.E.2d 1055. *See Clarke v. American Commerce National Bank,* 974 F.2d 127, 129 (9th Cir.1992) (district court may conduct *in camera* inspection of alleged confidential communications to determine whether the attorney-client privilege applies). ABB has agreed to submit the disputed documents to the Court for *in camera* review on or before November 29, 1996.

■ In the meantime, both counsel have indicated that further review of the documents may narrow the extent of their dispute. In this regard, I offer the following guidance. The attorney-client privilege protects disclosure of communications—not the underlying facts. Moreover, the communication must be for the purpose of facilitating "the rendering of legal advice or services in the course of a professional relationship." *Rossi v. Blue Cross,* 73 N.Y.2d at 593, 542 N.Y.S.2d 508, 540 N.E.2d 703. "[T]he mere fact a communication is made directly to an attorney, or an attorney is copied in on a memorandum does not mean that the communication is necessarily privileged." *United States Postal Service v. Phelps Dodge Refining Corp.,* 852 F.Supp. 156, 160 (E.D.N.Y.1994). And, as set forth earlier in

this decision, there is no privilege for corporate counsel who is giving, or corporate employees who are seeking, predominately business advice as opposed to legal advice.

 The party claiming the benefit of the attorney-client privilege shoulders the burden of establishing all of its essential elements. *United States v. Adlman*, 68 F.3d 1495, 1500 (2d Cir.1995). Therefore, should there exist documents or portions of documents for which counsel are unable to reach agreement, ABB's *in camera* submission shall include a detailed statement in support of their submission. The statement must (1) identify each document and its author, (2) identify the date the document was created, (3) identify the purpose for which the document was made and why such document should be considered primarily legal advice, (4) identify the name and position of all the *named* recipients of the document, (5) identify the name and positions of any other individuals who received the document, and (6) contain a *specific* and detailed explanation of why the particular document is claimed to be privileged. *See Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 200 (E.D.N.Y.1988) (requiring detailed privilege information in connection with *in camera* inspection)

### ABB'S CROSS–MOTION

ABB has cross-moved for a privilege log from Stallings. Although Stallings' counsel has provided a log listing documents being withheld on the basis of attorney-client privilege, the supplied log is insufficient. The cryptic descriptions and conclusory invocation of the attorney-client privilege contained in Stallings' log does not provide enough detail to allow ABB's counsel to discern whether to challenge non-disclosure. *See United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473–474 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996). Accordingly, ABB's cross motion is **granted** and Stallings shall supplement their privilege log in accordance with this decision.

### CONCLUSION

Stallings' motion to compel the further deposition of Mr. Madara is **denied.** Stallings'

motion for *in camera* inspection of designated documents is **granted.** ABB shall submit such documents to this Court on or before November 29, 1996. ABB's cross-motion for an adequate privilege log is **granted** and a supplemental log shall be provided forthwith.

**IT IS SO ORDERED.**