UNITED STATES of America; The State of New York, and UDC–Love Canal, Inc., Plaintiffs,

v.

HOOKER CHEMICALS & PLASTICS CORPORATION; Hooker Chemicals Corporation; Occidental Petroleum Investment Company; The City of Niagara Falls, New York; Niagara County Health Department; and The Board of Education of the City of Niagara Falls, Defendants.

Civ–79–990C.

United States District Court,
W.D. New York.

Feb. 18, 1987.

United States Department of Justice, Environmental Enforcement Section, Land and Natural Resources Div. (Barry S. Sandals, of counsel), Washington, D.C., and Robert Abrams, Atty. Gen. of the State of New York (Eugene Martin-Leff, and Judith Kimmerling, Asst. N.Y. Atty. Gen., of counsel), New York, New York, for plaintiffs.

Piper & Marbury (Thomas H. Truitt, of counsel), Washington, D.C., for defendants.

CURTIN, Chief Judge.

Occidental Chemical Corporation [OCC] now brings a motion for an order compelling the State of New York and UDC–Love Canal, Inc. [the State], to produce documents withheld on the basis of deliberative privilege. The State and federal government oppose.

In OCC's estimation, the State is presently withholding at least 650 documents on the basis of deliberative privilege, including over 400 solely on that basis (Item 185, Affidavit of Steven K. Yablonski, ¶ 9).[1] The company alleges that the State should be compelled to produce these documents because they are critical to OCC's defenses to the plaintiffs' claims, as well as to its own cross claims and counterclaims. The State argues that these documents are not discoverable because they are protected un-

der the well-established evidentiary privilege against disclosure of inter- and intra-agency documents containing recommendations of policy or expressing opinions and interpretations which comprise part of an agency decision-making or policy-making process. The United States supports the State's position.

The factual and procedural history of this case for purposes of the instant motion can be summarized as follows. From about 1942 until 1953, Hooker Chemicals & Plastics Corporation dumped over 40 million pounds of chemical wastes into a ditch, known as the "Love Canal" in Niagara Falls, New York. In 1953, the property containing the landfill was conveyed to the Niagara Falls School District. Subsequent transactions conveyed portions of the property to the City of Niagara Falls and to several individuals. Although no homes were constructed on the property, many residences were built on the land adjacent to the former landfill.

In the late 1970s and early 1980s, following increased public awareness of the seriousness of the potential health and safety problems posed by chemical migration away from the Love Canal site, the State considered various courses of action it might take. As part of this process, the State produced the documents at issue in this motion. As the State's papers make clear, these documents cover a wide range of subjects. *See* affidavits attached to Items 206, 218, 225, 226, and 245.

Although the parties have been able to come to an agreement regarding the status of many of the documents originally claimed to be protected by the so-called deliberative privilege, the parties indicate that they have been unable to resolve their differences regarding the remaining documents without court intervention. As such, this court must now define the general legal parameters of the deliberative priv-

---

1. In a letter to the court dated December 12, 1986 (Item 426), Assistant Attorney General Eugene Martin-Leff indicates that "approximately 450 deliberative documents" are at issue here, totaling some 2,250 pages.

ilege so that this and future discovery disputes can be resolved in a timely fashion.

After reviewing all of the parties' papers and the case law cited therein,[2] this court finds as follows. As all of the recent authority makes clear, the rationale for the deliberative privilege is to preserve the free expression, integrity, and independence of those responsible for making the determinations which enable the government to operate. *Kinoy v. Mitchell,* 67 F.R.D. 1 (S.D.N.Y.1975); *In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577 (E.D.N.Y.1979); *Peck v. United States,* 88 F.R.D. 65 (S.D.N.Y.1980); *In re Agent Orange Product Liability Litigation,* 97 F.R.D. 427 (E.D.N.Y.1983); *see also Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318 (D.D.C.1966), *aff'd sub nom. Carl Zeiss, Jena v. Clark,* 384 F.2d 979 (D.C.Cir.), *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967); *Kaiser Aluminum & Chemical Corp. v. United States,* 157 F.Supp. 939, 141 Ct.Cl. 38 (1958); *Zinker v. Doty,* 637 F.Supp. 138 (D.Conn.1986).

█ This privilege, as all parties acknowledge, is not unlimited in scope. Generally speaking, the deliberative privilege applies to all material reflecting the actual pre-decisional, mental, or deliberative process—inter- and intra-governmental evaluations, expressions of opinion, and recommendations on policy and decision-making matters. However, it does not apply to post-decisional, or so-called "working law communications," *i.e.,* explanations or interpretations of an existing government decision. The deliberative privilege also does not apply to 1) purely factual material or data which may be severed from a given deliberative memorandum or report, or 2) material which evaluates the implementation of a given government decision.

█ It is important to note that even when a given document is determined to be covered by the deliberative privilege under the above guidelines, various competing interests must still be balanced in order to determine whether disclosure would be appropriate in a given case. As the parties all acknowledge, Judge Weinstein has cited five criteria to be considered by the courts when determining whether material that ordinarily falls within the scope of the privilege should be disclosed. They are 1) the relevance of the evidenced to be protected; 2) the availability of other evidence; 3) the "seriousness" of the litigation and the issues involved; 4) the role of the government in the litigation; and 5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *In re Franklin National Bank Securities Litigation, supra* at 583. Contrary to OCC's position, this court finds that the State does not waive its right to withhold privileged deliberative documents simply because it is a plaintiff in a given action. Instead, as the *Franklin* case clearly indicates, the decision in each case must be made on the basis of its own relevant facts. Given the recognized importance of the deliberative privilege, this court will not override this privilege and compel discovery unless OCC can make a strong showing that the documents it seeks are not available elsewhere, and such documents are very important to the proper resolution of the case.

█ In this case, OCC asserts that because 1) the State alleges that it is entitled to recover for its cost-effective remedial actions under CERCLA, and 2) the company has raised defenses based on alleged governmental negligence, misconduct, and "bungling," it is entitled to discover the documents now at issue. This court does not find these arguments very persuasive in the context of this litigation. As the

---

**2.** The parties have also filed papers on the significance of the case of *United States v. Ward,* 618 F.Supp. 884 (E.D.N.C.1985), and the significance of the federal Administrative Procedure Act [APA], 5 U.S.C. § 551, *et seq.,* to the instant litigation. In a letter to the court dated September 12, 1986, the parties agreed that the instant motion "should be decided as soon as possible and need not be accompanied by simultaneous resolution of the Administrative Procedure Act issue."

plaintiffs point out throughout their papers, OCC's arguments along this line do not amount to allegations that the government acted illegally or in bad faith but, for the most part, constitute rather unspecific charges that the government's various decisions to act at Love Canal were recklessly or negligently made, and that these decisions reflect more of a concern for the political ramification of the situation than a true appreciation for any threat to public health and safety.

While OCC correctly recognizes the government's important role throughout the events at issue, as well as the seriousness of this litigation, this court believes that the company does not properly acknowledge that an evaluation of the propriety of the governments' actions at Love Canal during the 1970s and 1980s can be made, to a significant degree, using only non-privileged materials and sources. For example, OCC now seeks discovery for government documents relating to 1) the validity and significance of certain scientific and health-related findings, *see, e.g.,* Item 206, attached affidavit of Robert Huffaker; 2) the consideration of the propriety of various expenditures at or around the site, and 3) the State's contacts with the media regarding Love Canal. Item 185, Affidavit of Steven K. Yablonski, ¶ 10.

Generally, this court believes that these are not the types of materials which are so important to OCC's case that they would justify this court's contravention of the State's deliberative privilege here. If OCC would like to take issue with the scientific basis for the governments' actions at Love Canal, it may do so based on its own evaluation of the health and safety conditions there during the time pertinent to this case. Similarly, this court believes that, as a general matter, if the company wishes to challenge the propriety of government expendi-

tures at Love Canal or the governments' various communications with the media, these questions may be adequately evaluated by OCC solely on the basis of the non-deliberative materials available to it.

■ At the same time, this court believes that, in the interests of fairness, OCC is properly entitled to discover those documents, either in complete or redacted form, which explicitly and overtly evidence the State's concern for the possible political ramifications of the Love Canal situation, and which suggest various actions in light of these political ramifications. Likewise, OCC is entitled to discover any documents, either in complete or redacted form, which explicitly and overtly evidence the State's consideration of possible actions in light of other factors which are separate and unrelated to the health and safety of those persons residing or working at or near Love Canal.

■ Finally, this court finds that the State has satisfied all of the necessary procedural requirements to allow it to have asserted the deliberative privilege in this case. *United States Department of Energy v. Brett,* 659 F.2d 154 (T.E.C.A.1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 456 (1982); *Exxon Corp. v. United States,* 91 F.R.D. 26, 43–44 (N.D. Tex.1981), *(cited in In re Agent Orange Product Liability Litigation, supra* at 434–36).

Contrary to the State's position, this court believes that an *in camera* inspection of the documents at issue is necessary in this case. Because I believe that OCC has an important right to discover any material which comes within the general guidelines set forth in this order, it is crucial that some neutral Special Master personally review the documents at issue so that the interests of justice can be served here.[3]

---

**3.** In the State's letter of December 12, 1986 (Item 426), and the United States' letter of December 17, 1986 (Item 428), these parties indicated that they recommend that any *in camera* review of the documents at issue in this case be done by a United States Magistrate, rather than a Special Master. Because of the heavy case-

load in this district, as well as other practical considerations, this court declines to follow these recommendations.

The court also notes that, in OCC's February 5, 1987, letter to this court (Item 442), the company did not express an opinion on this matter because it believed that it "would be given full

*United States v. AT & T,* 86 F.R.D. 603 (D.D.C.1979).

The parties are directed to meet with the court on March 25, 1987, to discuss possible candidates to fulfill this important function. In the interim period, the parties are directed to try to reach an agreement about a possible candidate to conduct an *in camera* review in this case. The parties are also ordered to review the State's affidavits again and to try to agree upon the status of the disputed documents in light of the language of this order.

So ordered.

opportunity to meet with the Court and all other parties to express fully Occidental's views concerning how the Court might consider this complex question." Because this court believes that the parties have had sufficient time to give it suggestions about this matter, and because this dispute has been outstanding for over one year, I believe that an additional meeting on the Magistrate/Special Master question will serve no fruitful purpose at this time.