**UNITED STATES POSTAL
SERVICE, Plaintiff,**

v.

**PHELPS DODGE REFINING
CORPORATION, et ano,
Defendants.**

**No. CV 92–3855 (JBW).**

United States District Court,
E.D. New York.

May 18, 1994.

---

Stanley N. Alpert and Jennifer Boal, Asst. U.S. Attys., U.S. Attorney's Office, E.D. of N.Y., Brooklyn, NY, for plaintiff.

Harry Zirlin, Debevoise & Plimpton, New York City, for defendants.

### MEMORANDUM DECISION AND ORDER

GO, United States Magistrate Judge:

This action involves the alleged breach of contractual obligations by defendants in removing toxic wastes from a property (the "Property") that they sold to plaintiff United States Postal Service ("USPS") in December, 1986. Plaintiff and defendants have each moved to compel production of documents claimed by the other to be privileged. Defendants have asserted an attorney-client privilege, while plaintiff claims protection under the executive/deliberative process privilege.

## BACKGROUND

### Defendants' Claims of Privilege

Defendants originally withheld 469 documents from discovery on grounds of attorney-client privilege, work product doctrine or both. Plaintiff moved to compel production of approximately 300 documents, the bulk of which defendants claimed constituted attorney work product. Defendants voluntarily produced approximately 35 documents after discussions with plaintiff. At my request, defendants submitted the remaining disputed documents for *in camera* inspection.

On February 9, 1994 during a telephone conference, I advised defendants' counsel that after a partial and cursory review of the documents at issue, I found the documents did not, on their face, support defendants' claim that the documents had been prepared in contemplation of litigation.[1] At their request, I gave the defendants time to make additional submissions.

During the conference, I also indicated some documents that defendants originally had claimed to be work product may be protected by the attorney-client privilege. Defendants requested, and I granted, an opportunity to submit a revised privilege log so as to assert the attorney-client privilege for some or all of those documents. Since the documents had not yet been disclosed, there had been no waiver of the attorney-client privilege.

By letter dated February 10, 1994, Harry Zirlin, Esq., counsel for defendants, advised that they declined to offer further evidence in support of the claim of work product protection. They stated that their "review of the documents being withheld on this theory reveals that they are of no consequence to the present litigation." Defendants did not submit any further documentation regarding work product.

Defendants also submitted a revised privilege log asserting the attorney-client privilege with respect to 43 documents in addition to the 33 disputed documents for which they had originally claimed the privilege. The remaining and sole issue to determine with respect to plaintiff's motion to compel is whether the 76 documents for which defendants have asserted an attorney-client privilege should be produced.

### Plaintiff's Claim of Privilege

In its privilege log of January 13, 1994 listing 264 documents, plaintiff asserted an "executive/deliberative process privilege" for 90 documents. This privilege is invoked by Philip E. Wilson, Vice President, Facilities (acting), United States Postal Service, in his declaration dated January 7, 1994 and updated on February 9, 1994. Because the plaintiff had also asserted attorney-client privilege and/or work product doctrine as to 28 of the 90 documents, grounds that defendants do not challenge, the defendants' motion to compel concerns only the remaining 62 documents. Pursuant to my request, plaintiff also submitted those 62 documents for *in camera* inspection.

## DISCUSSION

### Defendants' claim of Attorney-client privilege

The attorney-client privilege protects "confidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The privilege attaches:

(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*In Re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036 (2d Cir.1984). The burden of proving each element of the privilege rests on the party claiming protection. *In re Horowitz*, 482 F.2d 72, 82 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *Stryker Corp. v. Intermedics Or-*

---

1. Defendants engaged in extensive dealings with the New York State Department of Environmental Conservation ("NYSDEC") from before the sale of the subject property to the present. Defendants claimed a work product privilege because they contended that they contemplated litigation with the NYSDEC during this period of time.

*thopedics, Inc.,* 145 F.R.D. 298, 301 (E.D.N.Y.1992).

■ In this case, the privilege arises in the context of communications between a corporate client and in-house counsel. In general, the privilege extends to confidential communications between corporate employees concerning matters in the scope of their corporate duties as counsel. *Upjohn Co. v. United States,* 449 U.S. 383, 394, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981); *In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984). It protects communications with in-house counsel as well as outside attorneys. *Upjohn,* 449 U.S. at 395, 101 S.Ct. at 685.

■ Defining the scope of the privilege for in-house counsel is complicated by the fact that these attorneys frequently have multifaceted duties that go beyond traditional tasks performed by lawyers. House counsel have increased participation in the day-to-day operations of large corporations. *See* Vincent C. Alexander, *The Corporate Attorney–Client Privilege: A Study of the Participants,* 63 St. John's L.Rev. 191, 195 & n. 8 (1989). Needless to say, the attorney-client privilege attaches only to legal, as opposed to business, services. "[T]he communication must be made to the attorney acting in her capacity as counsel. If the communication is made to the attorney in her capacity as a business adviser, for example, it ought not be privileged." John E. Sexton, *A Post–Upjohn Consideration of the Corporate Attorney–Client Privilege,* 57 N.Y.U.L.Rev. 443, 490 (1982) (citing *United States v. Rosenstein,* 474 F.2d 705, 714 (2d Cir.1973)). *See also In re Grand Jury Subpoena,* 599 F.2d 504, 511 (2d Cir.1979) ("Participation of the general counsel does not automatically cloak the investigation with legal garb.").

My review of the documents at issue indicates that house counsel for defendant Phelps Dodge Refining Corporation ("PDRC") were actively involved in many facets of remediation at the Property.

PDRC employees reported to house counsel and, based on those reports, counsel then frequently communicated and dealt with outside consultants on behalf of the corporation. Many of the tasks performed by counsel could have been undertaken by non-attorneys and the advice given made by an employee with no legal background. However, because the transaction was not a routine business matter and required considerable involvement with a state regulatory agency, it is clear that the subject matter was one of particular concern to the client and an area where the expectation of confidentiality arguably is greater. Thus, in situations where advice is rendered or sought which seem to touch upon sensitive issues, I have taken a broad view of legal advice in applying the privilege, in recognition of the unique role that an attorney brings to bear in imparting advice that may incidentally also involve business advice.[2]

■ On the other hand, the mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean that the communication is necessarily privileged. *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 403–04 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). The information-holder's motive for the communication, to the extent that it can be discerned from the document, thus is an important consideration. "If the information-holder will communicate with the attorney even if the privilege does not exist, or if a nonlegal objective is sufficient to stimulate communication with the attorney, then there is no reason for the privilege to attach." Sexton, 57 N.Y.U.L.Rev. at 490.

Applying these guidelines, I have set forth my determinations as to whether each document for which defendants have asserted attorney-client privilege is protected. The first table addresses the disputed documents for which defendants originally claimed the privilege, and the second table concerns the later

---

**2.** Another way of framing the issue is that I have tended to find a dominant legal purpose in cases where the advice sought may involve both business and legal considerations. *See* Sexton, 57 N.Y.U.L.Rev. at 491 ("application *vel non* of the privilege should turn upon whether the dominant purpose of the communication is legal or nonlegal," citing *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 147 (D.Del.1977)). *See also Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 34 (N.D.Ill.1980).

assertion of privilege. Due to the large number of documents, I will not discuss each one, but have described on the tables the reason for each determination. However, I will elaborate on several rulings which are generally representative of the bulk of the documents.

■ *Communications from Hart & Associates or Conestoga–Rovers.* Hart & Associates ("Hart") was an engineering firm recommended by the NYSDEC and hired by defendants in August, 1985 to conduct environmental studies of the soil and oversee remedial work at the Property. Conestoga–Rovers & Associates Limited ("Conestoga–Rovers") was hired as a consultant in 1989 to develop a supplementary remedial program. None of the documents between either consultant and defendants and their counsel is protected by the attorney-client privilege because neither consultant can be considered an agent encompassed by the privilege.

■ The attorney-client privilege may cover "communications made to agents of an attorney ... hired to assist in the rendition of legal services." *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989), *cert. denied,* —— U.S. ——, 112 S.Ct. 55, 116 L.Ed.2d 31 (1991); *United States v. Kovel,* 296 F.2d 918 (2d Cir.1961). In *Kovel,* Judge Friendly ruled that "the attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in usable form information obtained from the client." *Federal Trade Comm'n v. TRW, Inc.,* 628 F.2d 207, 212 (D.C.Cir.1980). The *Kovel* court "analogized the role of the accountant to that of a translator who puts the client's information into terms that the attorney can use effectively." *Id.*

As explained in 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 503(a)(3)[01] at 503–31 to 38 (1993), the application of the privilege in *Kovel* is now recognized as extending to representatives of the attorney, such as accountants; administrative practitioners not admitted to the bar; and non-testifying experts. *See also* Edward

M. Spiro & Caroline Rule, *'Kovel' Experts Cloaked by Attorney–Client Privilege,* N.Y.L.J., Feb. 22, 1994, at S1, S10 (privilege has been applied to "communications with a psychiatrist assisting a lawyer in forming a defense, a bail bondsman, and a polygraph operator").

Neither Hart nor Conestoga–Rovers fall within any of these recognized categories of representatives or agents for purposes of the attorney-client privilege. They cannot be characterized as administrative practitioners [3] since they were not employed by Phelps Dodge attorneys specifically to assist them in rendering legal advice. In fact, they were hired by defendants to formulate a remediation plan acceptable to the NYSDEC and to oversee remedial work at the Property. Their function was not to put information gained from defendants into usable form for their attorneys to render legal advice, but rather, to collect information not obtainable directly from defendants. Nor could the consultants be characterized as non-testifying experts. Earlier in this case, when defendants attempted to shield from discovery studies prepared by Conestoga–Rovers and Gitlen for other clients, defendants denied that these consultants served as experts and stated that if either consultant testified at trial, it would do so as a factual witness and not as an expert.

Courts that have considered the application of the attorney-client privilege to independent outside consultants have been cautious in extending its application. *See* discussion in *TRW,* 628 F.2d at 212. In *TRW,* the court ruled that documents prepared by a consultant engaged by defendant "to prepare a study of the company's complex computerized credit reporting system," 628 F.2d at 209, "might warrant application of an attorney-client privilege," but ultimately did not uphold the privilege:

Where, as here, we have not been provided with sufficient facts to state with reasonable certainty that the privilege applies, this burden is not met. As noted earlier TRW's claim lies at an outer and indistinct boundary of the law of attorney-client priv-

---

**3.** The administrative practitioners generally recognized by courts are patent agents employed by patent attorneys. *See Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514 (S.D.N.Y.1992).

ilege. Particularly where this is so, it is our responsibility to tread carefully, with as much precision as the facts before us permit.

*Id.* at 212.

▪ Defendants have made a claim of attorney-client privilege that goes well beyond the "outer boundary" of the privilege. Unlike the computer study at issue in *TRW*, which arguably was undertaken to assist the attorneys in litigation, the studies and work performed by Hart and Conestoga–Rovers clearly served other purposes. Moreover, these consultants based their opinions on factual and scientific evidence they generated through studies and collected through observation of the physical condition of the Property, information that did not come through client confidences. Such underlying factual data can never be protected by the attorney-client privilege and neither can the resulting opinions and recommendations. There are few, if any, conceivable circumstances where a scientist or engineer employed to gather data should be considered an agent within the scope of the privilege since the information collected will generally be factual, obtained from sources other than the client.

Because employees of Hart and Conestoga–Rovers are outside the attorney-client privilege, documents they have prepared are discoverable. *In re Grand Jury Matter*, 147 F.R.D. 82, 85 (E.D.Pa.1992). As discussed below, drafts of documents sent to third parties, including those sent to counsel for comments, are also not privileged.

Defendants have not presented any specific substantiation for their claim of attorney-client privilege here other than to argue sternly that communications between house counsel and the consultants should be considered privileged because counsel performed a legal role. This, of course, misses the point since the problem lies with the characterization of the consultant as an agent for purposes of the attorney-client privilege and not with the role of house counsel. While communications between counsel and Hart or Conestoga–Rovers might be protected in a work product context, defendants have abandoned their claim of protection under this doctrine.[4]

In reaching my conclusions about defendants' documents, I have specifically reviewed them to determine if any documents, particularly those containing attorney comments, did not disclose a client confidence or legal advice rendered. I find that none of the documents revealed any confidential communications by the defendants or their attorneys to the consultants. The notations by attorneys were not substantive and consisted mainly of editorial comments or inserts providing factual background, hardly a surprising result in light of the scientific nature of the documents involved. Because of the necessarily limited legal role that an attorney has in commenting on documents prepared by scientific consultants, denying application of the attorney-client privilege in this context should not adversely affect either the use of consultants or inhibit communications between the consultants and the client or counsel.

▪ *Drafts of documents.* Most drafts were of letters or other documents to be submitted to third parties. Although most drafts contained handwritten comments of house counsel, the fact the document is sent to a third party ordinarily removes the cloak of confidentiality necessary for protection under the attorney-client privilege. *P.*

---

4. Even if defendants had not abandoned that claim, disclosure of the documents would still have been required. After further review of the documents and the letter submissions of Harry Zirlin, attorney for defendants, dated February 3, 1994, February 8, 1994 and February 9, 1994, I find that defendants have not met their burden of proving the applicability of the work product privilege. While I agree that defendants may have, at some point prior to commencement of this action, contemplated litigation with the NYSDEC, the general statements of Mr. Zirlin will not suffice to establish whether and when the work product doctrine became applicable. Other than two documents, apparently from 1991, containing summaries of documents which were labelled "Attorney Work Product", none of the documents I examined clearly indicated that litigation with NYSDEC was contemplated. It is impossible to say, on this record, that these documents were prepared in connection with possible litigation rather than for some other purpose. Several documents suggested that defendants were merely seeking to comply with the requirements of NYSDEC.

& B. Marina, Ltd. Partnership v. Logrande, 136 F.R.D. 50, 56 (E.D.N.Y.1991), aff'd, 983 F.2d 1047 (2d Cir.1992) (citing United States v. (Under Seal), 748 F.2d 871, 876 (4th Cir. 1984)). The drafts may be considered privileged if they were prepared with the assistance of an attorney for the purpose of obtaining legal advice and/or contain information a client considered but decided not to include in the final version. Allegheny Ludlum Corp. v. Nippon Steel Corp., 1991 WL 61144 at *5 (E.D.Pa. Apr. 15, 1991). Most of the drafts do not contain sufficient information for determination to be made whether a confidential communication was eliminated from the final document. Defendants have the burden on the issue, and have made no such showing. Since defendants have not met their burden of establishing the privilege as to these drafts, they must all be disclosed. The one exception is document 56 where the client indicates in a confidential note the changes to be made in the final document. On the other hand, document 148 is a prime example of a draft with attorney notes not within this privilege since the attached final version sent to a third party contains the revisions made on the draft.

In addition, no privilege applies to the cover memoranda or attachments which were prepared by third parties such as memoranda or attachments to draft documents 80 and 268.

*Communications between Phelps Dodge employees and Phelps Dodge attorneys.* In many instances, defendants have invoked the privilege simply because an attorney is mentioned or because a memorandum contains a handwritten note from an attorney (principally Steve Crozier), but without regard to the nature of the communications. As I advised defendants during a telephone conference held on February 9, 1994, many documents clearly did not contain confidential client communications or legal advice. Defendants' counsel admitted that they had, out of caution to avoid waiver of the privilege, broadly asserted the privilege whenever a document contained a reference to or involved an attorney. I assured defendants that disclosure of such documents would not constitute a waiver of the privilege as to the contents of any

protected communication and invited defendants to reconsider their privilege list. Defendants never revised their privilege list to delete such documents. As a result, I found a large number of documents not to be protected by the attorney-client privilege because they contained no confidential communications.

Examples of documents from an employee to house counsel which are not privileged include document 4, which is merely a transmittal letter, and documents 40 and 106, which summarize meetings attended by employees of defendants and others. An example where the privilege has been upheld is document 293 because the handwritten memorandum contains client confidences and seeks legal advice.

The privilege has been upheld for documents sent by house counsel where the documents reveal client confidences or provide legal assistance, such as the legal memorandum from Tubman to Bell, containing legal advice (document 207). The privilege has not been upheld for documents such as 29, because this letter transmits only factual information or matters of public record. A large number of documents not found to be privileged are documents from third parties which contain notations from Steve Crozier which neither contain legal advice or a client confidence. These include documents 9 (request to talk about a certain letter), 16 (note to set up a meeting), 138 (relates facts) and 336 (requests comments from Konerko, then President of PDRC).

*Communications among Phelps Dodge employees, where attorneys have been copied.* The attorney-client privilege would apply to such documents if they contained communications intended to be confidential and a dominant purpose of the communication was to obtain legal advice. I found no documents qualified for the privilege because all were written for some other purpose than to seek legal advice and would have been prepared whether or not the attorney was sent a copy. Examples include a memorandum summarizing a meeting among third parties (292) or a report regarding actions to be taken (390) or matters involving third parties (62). A corporation cannot be per-

mitted to insulate its files from discovery simply by sending a "cc" to in-house counsel.

*Handwritten notes of Scott Crozier.* Some notes, such as document 118, apparently do not contain legal advice, since it simply identifies the persons the attorney talked to about the letters. Documents 81, 262 and 280 are notes of conversations with unspecified persons who may or may not be clients and seem to contain factual information rather than any client confidence. Since there is no evidence that these notes are of privileged communications with clients, defendants have failed to meet their burden of proving the elements of the privilege. *Sobol v. E.P. Dutton, Inc.,* 112 F.R.D. 99, 104 (S.D.N.Y.1986).

*Inventory of documents in files.* While the inventories in documents 120 and 121 themselves are not privileged, they contain summaries of documents, some of which are privileged in document 121. Both documents should be produced, but the references to privileged documents in 121 may be redacted.

■■■■ *Communications with Outside Counsel.* Goldfarb & Fleece were retained by PDRC to assist in lobbying for state legislation for water rights in connection with the Property. Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege. For example, in document 44, which is a letter from house counsel to Goldfarb, the communication is *not* privileged since the letter simply describes the current status of certain matters to disclose in lobbying efforts and specifically in response to concerns raised by a legislator. *See North Carolina Electric Membership Corp. v. Carolina Power & Light Co.,* 110 F.R.D. 511, 517 (M.D.N.C.1986). Since this communication contemplates disclosure to a third party, it falls outside the bounds of this privilege.

### Plaintiff's Claim of Executive/Deliberative Process Privilege

■■■■ The executive/deliberative process privilege applies to "all material reflecting the actual pre-decisional, mental, or deliberative process—inter- and intra-governmental evaluations, expressions of opinion, and rec- ommendations on policy and decision-making matters." *United States v. Hooker Chemicals & Plastics Corp.,* 114 F.R.D. 100, 102 (W.D.N.Y.1987). As courts have recognized, the protection of pre-decisional intragovernmental opinions promotes the "free flow of ideas among government officials" necessary for effective governing. *In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 580 (E.D.N.Y.1979); *Kaiser Aluminum & Chemical Corp. v. United States,* 157 F.Supp. 939 (Ct.Cl.1958) (Justice Reed, sitting by designation). The privilege is designed to "safeguard the quality and integrity of governmental decisions." *Hopkins v. United States Dep't of Hous. & Urban Dev.,* 929 F.2d 81, 84 (2d Cir.1991).

■■■■ As is the case with respect to other privileges, the burden of justifying application of the executive/deliberative process privilege falls upon the party seeking to invoke it. *King v. Conde,* 121 F.R.D. 180, 189 (E.D.N.Y.1988) (citing *Von Bulow v. Von Bulow,* 811 F.2d 136, 144 (2d Cir.1987)). Also, this privilege, as well as other privileges, cannot be "expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974); *Mobil Oil Corp. v. Dep't of Energy,* 102 F.R.D. 1, 4 (N.D.N.Y.1983).

■■■■ Documents qualifying under this privilege must be "predecisional" and relate to the deliberative process. *Hopkins,* 929 F.2d at 84. Only documents which are prepared to assist a decision-maker in arriving at a decision are privileged. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975); *Resolution Trust Corp. v. Diamond,* 137 F.R.D. 634, 640 (S.D.N.Y.1991). I find that a few of the documents fail to meet these requirements because they pertain to purely factual materials, *Environmental Protection Agency v. Mink,* 410 U.S. 73, 89, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973), or do not concern the formulation of policy. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151–52, 95 S.Ct. 1504, 1516–17, 44 L.Ed.2d 29 (1975); *Mobil Oil Corp.,* 102 F.R.D. at 5. However, in light of my other rulings below, it is unnecessary to consider this element of

the privilege further other than to point out one category of documents which clearly does not come within the contemplation of this privilege.

 Documents 126, 127, 130 and 142 concern plaintiff's efforts to respond to inquiries from Senator Pryor regarding the excessive costs incurred by the Postal Service in acquiring the Property. The reasons why the plaintiff seeks to prevent disclosure of these documents is apparent, but the basis for assertion of the privilege is not. These documents have nothing to do with the formulation of any decision or policy. The only "deliberations" involved are those of Postal Service officials discussing ways to respond to a potentially embarrassing Congressional inquiry. The tactical maneuvers of an agency in responding to a congressional inquiry are simply not the sort of executive actions that should be protected under the deliberative privilege.

 Since the executive/deliberative process privilege is a qualified privilege, the determination whether to uphold the privilege must be made only after weighing the various competing interests for and against disclosure. *In re Franklin National Bank,* 478 F.Supp. at 582. A starting point for analysis are the criteria set forth in Judge Weinstein's decision in *Franklin National Bank.* 478 F.Supp. at 583:

> 1) the relevance of the evidence to be protected; 2) the availability of other evidence; 3) the "seriousness" of the litigation and the issues involved; 4) the role of the government in the litigation; and 5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Hooker,* 114 F.R.D. at 102. This list is not intended to be exhaustive and the applicable factors and weight to be given will vary from case to case. *King v. Conde,* 121 F.R.D. 180,

190–91 (E.D.N.Y.1988); *Grossman v. Schwarz,* 125 F.R.D. 376, 382 (S.D.N.Y.1989); *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa.1973). Judge Weinstein suggests in *King* further factors that are applicable here, including the importance of the information to a litigant's case and strength of that litigant's case. 121 F.R.D. at 194–95.

*Application of the balancing test.*

As defendants point out, the affidavit of Philip E. Wilson fails to specify the harms that would result from disclosure or even to identify the information that is supposedly privileged. Mr. Wilson only claims that disclosure would "inhibit the candor of Postal Service employees in making recommendations to their superiors or in their superiors' frank discussion of these recommendations." While I agree with defendants that the assertion is conclusory and states the obvious, this may not be ground in itself to refuse application of the privilege outright.[5] The lack of specificity is simply another factor to weigh, while the absence of a showing of specific and substantial harms would mitigate against upholding the privilege. *Grossman,* 125 F.R.D. at 383.

The plaintiff's contention that disclosure would chill intra-agency discussions overstates the harm. *In re Subpoena Duces Tecum Served upon the Office of the Comptroller of the Currency,* 151 F.R.D. 1, 3 (D.D.C.1992). As Judge Weinstein noted in *Franklin National Bank,* the balancing of interests must be made anew in each case in which the privilege is asserted. A single instance of disclosure does not mean that disclosure will be ordered in all circumstances. 478 F.Supp. at 585. In addition, there is no empirical data presented to show that disclosure will result in the asserted harm of stifling candor. Courts considering this issue in the context of civil rights actions against police officers have concluded that fear of disclosure is likely to increase rather

---

**5.** I note that the privilege has been upheld even in the absence of the submission of any affidavit by the government. *See Grossman,* 125 F.R.D. at 383; *United States v. Village of Island Park,* CV–90–0992 (E.D.N.Y. Jan. 25, 1991) (the justifications given and the *in camera* review of the documents adequately meets the procedural requirement for invoking the privilege).

Moreover, courts which have insisted on greater specificity in affidavits ordinarily have done so because of a reluctance to conduct an *in camera* inspection. *See e.g. Mobil Oil Corp.,* 102 F.R.D. at 7 & n. 4. Where the claimant's justification for invoking the privilege is insufficient, a court will ordinarily conduct *in camera* review. *Resolution Trust Corp. v. Diamond,* 137 F.R.D. at 642.

**166**

than diminish candor. *King,* 121 F.R.D. at 193; *Kelly v. San Jose,* 114 F.R.D. 653, 665 (N.D.Cal.1987). Because the institutional interests and issues here are less controversial than those in civil rights cases, the possibility that disclosure would have a chilling effect should be even more remote.

 Plaintiff's other arguments against disclosure do not address the harm of disclosure, but rather only the status of the parties and issues and the absence of an overriding need for disclosure. Plaintiff offers the myopic view that the information sought is not relevant to the remediation issue. But there are other issues in this case, some of which relate to the defendants' case and include whether plaintiff has used remediation as a pretext to avoid the contract or has acted in good faith. Because plaintiff's state of mind is critical to these defenses, documents underlying its deliberations regarding the Property may be highly probative. Notwithstanding plaintiff's contention (again conclusory and without specifics) that the information is available from other sources, it is precisely because of the nature of the deliberative process privilege that documents falling within its scope may shed more light on plaintiff's intentions.

However, plaintiff's motives become an issue only after it acquired the Property or at least exercised its option to do so on September 16, 1986. Therefore the documents prepared prior to this date are not relevant and need not be disclosed.

I note that plaintiff may be able to prove at trial that the good faith defense may simply be defendants' ploy to diffuse attention from the fact that they have failed to meet contractual obligations. While this is a factor weighing against disclosure, it is far outweighed by the overriding interest in truth-finding at trial. Since defendants have already survived plaintiff's motion for partial summary judgment and this case is almost ready for trial, it makes little sense to deny defendants this one last area of information, particularly since the reasons for non-disclosure are weak.

 A further consideration is the government's role in this case. As the plaintiff correctly notes, the fact that the Postal Service is a litigant is not determinative. What is significant, and is the most important factor here, is that this case is essentially a commercial dispute. The underlying transaction involves the sale of a property, a commonplace commercial transaction that does not implicate any policy-making, regulatory or other uniquely governmental activity or function. No factors are present to transform the determination to acquire the Property into one involving important governmental policies and interests, such as a national security interest in a defense contract, an interest in promoting equal employment in connection with construction contracts, or special law enforcement needs in certain cases. The Postal Service is not ordinarily in the business of acquiring real estate and when it does so, its concerns are like those of any other buyer of commercial real estate—to get value for its money. In the absence of other overriding governmental interests, the government as buyer under a contract of sale should not have an advantage over other commercial actors. With respect to discovery, a governmental litigant should not be armed with the deliberative process privilege as a shield to prevent disclosure to adversaries who lack such protection, where the context is (as here) merely commercial.

As a final point, although "this action does not involve issues of great public concern," as plaintiff correctly notes, the applicable public concerns also weigh in favor of disclosure. The question of toxic waste disposal is one that has increasingly required the attention of government. While the Postal Service's actions in this case with regard to the toxic waste at issue ultimately may prove to be less than exemplary, full airing of such issues is likely to produce a public benefit in handling similar transactions in the future.

In summary, I find that the factors in favor of disclosure outweigh the need for secrecy in this case.

*CONCLUSION*

Plaintiff's motion to compel production of documents to which defendants have asserted an attorney-client privilege is granted in part and denied in part. Defendants must

produce within three (3) business days the documents specified in the two tables attached as appendices.

Defendants' motion to compel production of documents to which plaintiff has asserted an executive/deliberative process privilege is also granted in part and denied in part.

Plaintiff is directed to produce within three business days the following documents numbered on its privilege log: 76, 81, 82, 85, 87, 89, 95, 100, 115, 123, 126, 127, 130, 133, 138, 141, 142, 150, 155, 169, 181, 186, 189, 191, 192, 254 and 256.

SO ORDERED.

## TABLE 1

Documents for which defendants originally
asserted attorney-client privilege

| Document | Determination | Rationale |
| --- | --- | --- |
| 4. Letter—Crozier to Bernstein of Skadden, Arps, dated 8/22/91 attaching letter from Konerko to Coe dated 7/26/91 and letter from Coe to Konerko dated 8/7/91 | Not privileged. | No client confidences disclosed—simply a transmittal letter. |
| 9. Letter—Coe to Konerko dated 4/23/91 attaching draft executive summary with handwritten notes and Memorandum from Konerko to Judd dated 4/19/91 | Not privileged. | No client confidence disclosed in memorandum. Letter is from Postal Service. |
| 16. Memorandum—Gitlen to Crozier, Bernstein of Skadden and Rovers of Conestoga–Rovers 9/6/91 | Not privileged. | No confidence disclosed. No legal opinion sought or given. Distributed to Conestoga–Rovers. |
| 19. Draft letter—Konerko to Coe 7/7/92 | Not privileged. | Draft of document to third party. |
| 27. Memorandum—Mendola to Crozier; cc: Whisler, Konerko, Haase 11/1/88 | Privileged. | Seeks legal advice. Contains client confidence. |
| 29. Letter—Whisler to Munroe enclosing summary of status of Laurel Hill by Crozier 9/14/88 | Not privileged. | Not confidential. Letter states that information is a matter of public record. |
| 31. Memorandum—Crozier to Whisler on current status of Laurel Hill 8/8/88 | Privileged. | Intended to be confidential. |
| 37. Memorandum—Crozier to Konerko, cc: Kimball, Mendola, Whisler, attaching redraft of letter from Hart to Hammond of DEC; cc: Kimball, Mendola, Whisler 7/20/88 | Not privileged. | Redraft of Hart letter with handwritten comments of Crozier. Hart is not covered by privilege. No confidences or legal advice. |
| 38. Same as document # 37, but Whisler's copy with his handwritten notes. | Not privileged. | See above. |
| 44. Letter—from Crozier to Lubin of Goldfarb & Fleece dated 6/28/88, cc: Konerko, Rice, Neubeck, attaching letter from Anne of Hart to | Not privileged. | Letter dated 6/28/88 is from house counsel to outside attorneys who are lobbyists and did not render legal services covered under privi- |

| Document | Determination | Rationale |
|---|---|---|
| Evans of C.T. Male dated 2/12/88, letter from Knizek to Neubeck dated 2/5/88, letter from Anne to Knizek dated 2/22/88, and letter from Knizek to Neubeck dated 3/31/88 | | lege. Attachments all involve third parties not covered by the privilege. |
| 45. Memorandum—Crozier to Judd dated 5/20/88, cc: Whisler, Konerko, Rice, attaching memorandum from Crozier to Konerko dated 5/18/88; cc: Judd, Whisler, Rice, Haase, Mendola with attachments | Memorandum dated 5/18/88: privileged. Memorandum dated 5/20/88: not privileged. | Memorandum dated 5/18/88 constitutes legal advice. Memorandum dated 5/20/88 contains only factual information. |
| 46. Same as 5/18/88 memorandum of document #45 | Privileged. | See above. |
| 47. Memorandum—Mendola to Crozier; cc: Rice, Konerko, Haase 5/18/88 | Not privileged. | Factual information. |
| 50. Memorandum—Crozier to Konerko; cc: Whisler 4/11/88 | Not privileged. | Factual information shared with Postal Service. |
| 53. Memorandum—Haase to Crozier; cc: Konerko 3/23/88 | Not privileged. | Factual summary. |
| 56. Draft response by Haase to DEC survey of remedial action costs, with cover note from Crozier to Haase 2/26/88 | Draft: privileged. Cover note: not privileged. | Draft contains confidences. Cover memo is simply a transmittal. |
| 72. Memorandum—Haase to Crozier; cc: Konerko, Mendola, Kimball 3/23/88 | Privileged. | Contains client confidences. |
| 74. Same as second part of document #45, and document #46 | Privileged. | See document #45 |
| 83. Memorandum—Mendola to Crozier 10/5/88 | Privileged. | Seeks legal advice. |
| 93. Handwritten memo—Mendola to Crozier 11/21/88 | Not privileged. | No client confidence disclosed. |
| 106. Letter—Baughman to Cook; cc: Bell 1/8/87 | Not privileged. | No client confidence disclosed. |
| 130. Memorandum—Konerko to Crozier, Haase, Mendola, Rice, Rochin, Whisler 2/26/88 | Not privileged. | No client confidence disclosed. |
| 136. Memorandum—Konerko, Crozier to Whisler; cc: Judd 8/11/89 | Privileged. | Contains client confidences. |
| 138. Memorandum—Konerko to Crozier 11/9/89 | Not privileged. | Discusses matters of public information. |
| 141. Memorandum—Mendola to Crozier dated 4/26/89, attaching letter from Gitlen of Whiteman Osterman to Konerko dated 4/19/89 and information packets from potential consultants | Memo and letter: privileged. Information packets: not privileged. | Mendola memorandum contains confidences. Gitlen letter gives advice. Information packets are from third parties who could not qualify as agents. |

| Document | Determination | Rationale |
|---|---|---|
| 221. Letter from Mack of Hart to Lubin of Goldfarb & Fleece dated 2/20/86, attaching draft letter from Evans, Kitchel to Lubin; and drafts of contract with Postal Service | Not privileged. | Goldfarb & Fleece are lobbyists. Hart is not covered by privilege. Draft of document is sent to third party and waived once communicated to Hart. |
| 250. Letter—Coe to Konerko with Crozier's handwritten note to Gitlen 12/27/90 | Not privileged. | Note reveals no client confidence nor provides legal advice. |
| 269. Draft of executive summary with handwritten note and fax cover sheet from Neubeck to Crozier 5/27/88 | Not privileged. | Hart is not covered by privilege. |
| 307. Faxed draft of presentation to DEC with cover memo from Crozier to Konerko, Haase, Mendola dated 5/23/88 | Not privileged. | Transmittal of Hart's outline. Hart not covered by privilege. |
| 333. Memorandum—Crozier to Whisler; cc: Yearley, Judd, Konerko 5/30/90 | Privileged. | Contains client confidences and legal advice. |
| 355. Letter—Crozier to Bernstein of Skadden and Gitlen of Whiteman Osterman dated 5/10/91; cc: Whisler, Konerko, Rovers, attaching draft of proposed letter to Coe from Konerko. | Not privileged. | Although it seeks legal comment, draft is of document addressed to third party. No confidence revealed in transmittal. |
| CR31. Letter from Pruett to Rovers, Puskas of Conestoga–Rovers and Gitlen of Whiteman, Osterman, attaching pages of EPA proposal. 5/14/92 | Not privileged. | Conestoga–Rovers is not covered by privilege. |
| CR34. Letter from Gitlen to Pruett; cc: Pentilchuk, dated 8/2/93, attaching letter from Corbly to Gitlen dated 8/2/93 and licensing agreement. | Letter from Gitlen: privileged. Letter from Corbly and licensing agreement: not privileged. | Only letter from Gitlen contains legal opinion. |

TABLE 2

Documents for which defendants asserted
attorney-client privilege in February 1994

| Document | Determination | Rationale |
|---|---|---|
| 25. Draft letter—Hart to Knizek, Iannotti of NYS-DEC, plus attachment on EPA Method 1312 1/6/88 | Not privileged. | Hart is not covered by the privilege. |
| 32. Letter — Crozier to Jacot, Neubeck of Hart; cc: Konerko, Mendola, Haase, Kimball 8/8/88 | Not privileged. | Hart is not covered by the privilege. |

| Document | Determination | Rationale |
|---|---|---|
| 40. Memorandum — Haase to Crozier; cc: Whisler, Konerko, Judd 7/8/88 | Not privileged. | This is a summary of a meeting attended by representatives from the Postal Service and the DEC. Factual information only. No client confidence disclosed. |
| 62. Memorandum — Konerko to Judd; cc: Crozier, Himebaugh, Haase, Mendola, Rice, Scanlon, Stilwell, Whisler, Yearley 1/29/88 | Not privileged. | No client confidence disclosed. Not made to obtain legal advice. Factual information and writer's opinion. |
| 73. Fax cover sheet — Neubeck to Crozier, dated 5/19/88, attaching DEC publication with handwritten notes. | Not privileged. | Hart is not covered by privilege. |
| 80. Fax cover sheet—Neubeck to Crozier, dated 7/1/88, attaching draft letter to Jorling of DEC and attachment. | Not privileged. | Hart is not covered by privilege. |
| 81. Handwritten notes of Crozier to files 7/5/88 | Not privileged. | Not proven that communication is with client and confidential. |
| 84. Fax cover sheet—Urschel of Hart to Crozier, Mendola, dated 11/23/88, attaching handwritten notes | Not privileged. | Contains no client confidences. Hart is not covered by privilege. |
| 85. Memorandum—Neubeck to Mendola, attaching handwritten notes 11/21/88 | Not privileged. | Hart is not covered by privilege. |
| 86. Memorandum—Crozier to Mendola dated 9/20/88, attaching draft letter from Neubeck of Hart to Knizek of DEC dated 9/12/88 | Not privileged. | Hart is not covered by privilege. |
| 110. Letter—Crozier to Puskas of Conestoga–Rovers, cc: Konerko, Rovers, Gitlen dated 10/9/91, attaching letter from Puskas to Crozier dated 9/23/91 and table | Not privileged. | Conestoga–Rovers is not covered by privilege. |
| 115. Draft letter—Konerko to Coe of Postal Service. 9/24/91 | Not privileged. | Draft of letter to third party. |
| 117. Draft letter—Konerko to Coe of Postal Service, with handwriting dated 11/7/91. 10/9/91 | Not privileged. | Draft to be sent to third party. Handwritten notes do not contain confidences or legal advice. |
| 118. Letter—Becker of Goldfarb & Fleece to Coe, cc: Crozier, with handwriting by Crozier and attaching 12/27/90 letter from Coe to Konerko. 1/8/91 | Not privileged. | Letters to third parties. Crozier notes do not contain legal advice or client confidences. |
| 120. Outline or inventory of documents in a file on asbestos issues. Labeled work product. 9/4/91 | Not privileged. | Summaries of documents do not constitute legal advice. No privileged documents covered. |

| Document | Determination | Rationale |
| --- | --- | --- |
| 121. Outline or inventory of documents in a file on contract negotiation/site remediation. Labeled work product. 9/11/91 | Not privileged, except for summaries of documents found to be privileged. | Summaries of documents do not constitute legal advice. However, redact discussion of contents of privileged documents (items 2, 3, 5, 6, 8, 9, 10, 11, 13, 17, 20, 24, 33, 53, 56, 64 and 70). |
| 148. Letter—from Konerko to Sullivan of DEC, with handwriting, and attaching draft of same dated 3/28/89. 4/24/89 | Not privileged. | Document addressed to third parties. Draft discloses no client confidence. |
| 163. Letter—from Puskas of Conestoga–Rovers to Gitlen of Whiteman Osterman; cc: Rovers, Crozier, Konerko, attaching work plan. 3/8/90 | Not privileged. | Conestoga–Rovers is not covered by privilege. |
| 169. Letter—from Puskas of Conestoga–Rovers to Crozier, with handwriting by Crozier and Mendola. 7/13/90 | Not privileged. | Conestoga–Rovers is not covered by privilege. Handwritten comments contain no confidences, no legal advice. |
| 207. Notes from Bell attaching legal memorandum from Tubman to Bell dated 6/7/85 | Privileged. | Notes seek legal advice. Memorandum provides legal advice. |
| 208. Letter—Curry of Evans, Kitchel to Tubman 5/29/85 | Privileged. | Legal advice. |
| 226. Handwritten memo—Baughmann to Cook, Tubman; cc: Bell attaching 9/17/86 Daily News article. | Not privileged. | Memo contains no confidences. |
| 243. Draft of Hart remedial action plan with cover letters from Crozier to Mendola and from Konerko to Crozier | Not privileged. | Draft with Crozier comments of document submitted to DEC. |
| 247. Memorandum—Bennett to Judd dated 6/4/90, attaching memorandum from Crozier to Whisler dated 5/30/90 | Memo from Crozier: privileged. Memo from Bennett: not privileged. | Memo from Bennett: neither party is an attorney. |
| 257. Letter—Puskas to Crozier attaching letter from Puskas to Rexrode of ADT 9/6/90 | Not privileged, except for handwritten comment of Crozier. | Conestoga–Rovers is not covered by privilege, except redact handwritten comment which contains legal opinion. |
| 260. Letter—Puskas to Crozier attaching response to DEC comments; cc: Rovers, Gitlen, Konerko 5/31/90 | Not privileged. | Conestoga–Rovers is not covered by privilege. |
| 262. Undated Crozier notes | Not privileged. | Not proven that communication is with client and confidential. |
| 268. Three-page draft of meeting presentation with handwritten notes, along with cover letter from Boggs to Mendola, cc; Wilson, Cro- | Not privileged. | Cover memoranda and attachments contain no client confidences. Draft of document sent to third party. |

| Document | Determination | Rationale |
|---|---|---|
| zier, Dean, Soukup, fax cover sheet, phone messages and attachments 5/25/88 | | |
| 280. Crozier handwritten notes | Not privileged. | Not proven that communication is with client and confidential. |
| 281. Crozier handwritten notes on meeting with Hart | Not privileged. | Hart is not covered by privilege. |
| 292. Memorandum—Haase to Mendola, prepared at Crozier's request dated 7/12/88 attaching draft of document # 40 with handwritten notes dated 7/8/88 | Not privileged. | Haase memorandum: neither party is an attorney; see document # 40 |
| 293. Handwritten memorandum—Mendola to Crozier 9/12/88 | Privileged. | Contains client confidences. |
| 317. Same as document # 40 | Not privileged. | See document # 40 |
| 330. Letter—Coe to Konerko dated 7/31/90 with handwritten notes attaching letter from Cook to Coe dated 1/16/87 | Not privileged. | Notes contain no client confidences. |
| 332. Draft letter—Konerko to Coe 7/9/91 | Not privileged, except for handwritten comment at top.. | Draft to third party. Comment contains legal opinion. |
| 335. Draft letter from Hart to Knizek, Iannotti of DEC; with fax cover sheet and attachments 12/7/88 | Not privileged. | Hart is not covered by privilege. |
| 347. Memorandum—Crozier to Konerko, attaching draft letter terminating ACES contract; cc: Whisler 10/15/88 | Not privileged. | Draft of document to third party. |
| 348. Draft of memorandum—Judd to Konerko with Crozier's handwritten comments | Not privileged. | Draft of intra-corporate memo between officers who are not counsel. Attorney comments editorial. |
| 390. Memorandum—Konerko to Judd dated 1/18/88; cc: Crozier, Himebaugh, Haase, Mendola, Rice, Scanlon, Stilwell, Whisler, Yearley, attaching letter from Laswell of ICF Tech. to Konerko dated 1/18/88 | Not privileged. | No client confidences disclosed. No indication that legal services were sought. |
| 414. Same as document # 260 | Not privileged. | See document # 260 |
| 415. Memorandum—Konerko to Crozier, summarizing meeting held on 5/16/90 5/16/90 | Not privileged. | This is a summary of a meeting attended by representatives from the Postal Service. No client confidences disclosed. |
| 417. Memorandum—Crozier to Whisler, Konerko dated 5/6/91 attaching draft letter | Not privileged. | Draft of document to third party and transmittal memo. |

| Document | Determination | Rationale |
|---|---|---|
| from Konerko to Coe dated 5/3/91 and attachment | | |
| 433. Memorandum—Crozier to Van Wagoner; cc: Whisler, Konerko, enclosing original letter of transmittal and performance and payment bond for ACES 9/9/88 | Memorandum: privileged. Attachments: not privileged. | Memorandum contains legal advice. Attachments are to third party. |