852 F.Supp. 156 (1994)
UNITED STATES POSTAL SERVICE, Plaintiff,
v.
PHELPS DODGE REFINING CORPORATION, et ano, Defendants.
No. CV 92-3855 (JBW).
United States District Court, E.D. New York.
May 18, 1994.
*157 *158 Stanley N. Alpert and Jennifer Boal, Asst. U.S. Attys., U.S. Attorney's Office, E.D. of N.Y., Brooklyn, NY, for plaintiff.
Harry Zirlin, Debevoise & Plimpton, New York City, for defendants.

MEMORANDUM DECISION AND ORDER
GO, United States Magistrate Judge:
This action involves the alleged breach of contractual obligations by defendants in removing toxic wastes from a property (the "Property") that they sold to plaintiff United States Postal Service ("USPS") in December, 1986. Plaintiff and defendants have each moved to compel production of documents claimed by the other to be privileged. Defendants have asserted an attorney-client privilege, while plaintiff claims protection under the executive/deliberative process privilege.

*159 BACKGROUND

Defendants' Claims of Privilege
Defendants originally withheld 469 documents from discovery on grounds of attorney-client privilege, work product doctrine or both. Plaintiff moved to compel production of approximately 300 documents, the bulk of which defendants claimed constituted attorney work product. Defendants voluntarily produced approximately 35 documents after discussions with plaintiff. At my request, defendants submitted the remaining disputed documents for in camera inspection.
On February 9, 1994 during a telephone conference, I advised defendants' counsel that after a partial and cursory review of the documents at issue, I found the documents did not, on their face, support defendants' claim that the documents had been prepared in contemplation of litigation.[1] At their request, I gave the defendants time to make additional submissions.
During the conference, I also indicated some documents that defendants originally had claimed to be work product may be protected by the attorney-client privilege. Defendants requested, and I granted, an opportunity to submit a revised privilege log so as to assert the attorney-client privilege for some or all of those documents. Since the documents had not yet been disclosed, there had been no waiver of the attorney-client privilege.
By letter dated February 10, 1994, Harry Zirlin, Esq., counsel for defendants, advised that they declined to offer further evidence in support of the claim of work product protection. They stated that their "review of the documents being withheld on this theory reveals that they are of no consequence to the present litigation." Defendants did not submit any further documentation regarding work product.
Defendants also submitted a revised privilege log asserting the attorney-client privilege with respect to 43 documents in addition to the 33 disputed documents for which they had originally claimed the privilege. The remaining and sole issue to determine with respect to plaintiff's motion to compel is whether the 76 documents for which defendants have asserted an attorney-client privilege should be produced.

Plaintiff's Claim of Privilege
In its privilege log of January 13, 1994 listing 264 documents, plaintiff asserted an "executive/deliberative process privilege" for 90 documents. This privilege is invoked by Philip E. Wilson, Vice President, Facilities (acting), United States Postal Service, in his declaration dated January 7, 1994 and updated on February 9, 1994. Because the plaintiff had also asserted attorney-client privilege and/or work product doctrine as to 28 of the 90 documents, grounds that defendants do not challenge, the defendants' motion to compel concerns only the remaining 62 documents. Pursuant to my request, plaintiff also submitted those 62 documents for in camera inspection.

DISCUSSION

Defendants' claim of Attorney-client privilege
The attorney-client privilege protects "confidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The privilege attaches:
(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.
In Re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 (2d Cir.1984). The burden of proving each element of the privilege rests on the party claiming protection. In re Horowitz, 482 F.2d 72, 82 (2d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); Stryker Corp. v. Intermedics Orthopedics, *160 Inc., 145 F.R.D. 298, 301 (E.D.N.Y.1992).
In this case, the privilege arises in the context of communications between a corporate client and in-house counsel. In general, the privilege extends to confidential communications between corporate employees concerning matters in the scope of their corporate duties as counsel. Upjohn Co. v. United States, 449 U.S. 383, 394, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981); In re Sealed Case, 737 F.2d 94, 99 (D.C.Cir.1984). It protects communications with in-house counsel as well as outside attorneys. Upjohn, 449 U.S. at 395, 101 S.Ct. at 685.
Defining the scope of the privilege for in-house counsel is complicated by the fact that these attorneys frequently have multifaceted duties that go beyond traditional tasks performed by lawyers. House counsel have increased participation in the day-to-day operations of large corporations. See Vincent C. Alexander, The Corporate Attorney-Client Privilege: A Study of the Participants, 63 St. John's L.Rev. 191, 195 & n. 8 (1989). Needless to say, the attorney-client privilege attaches only to legal, as opposed to business, services. "[T]he communication must be made to the attorney acting in her capacity as counsel. If the communication is made to the attorney in her capacity as a business adviser, for example, it ought not be privileged." John E. Sexton, A Post-Upjohn Consideration of the Corporate Attorney-Client Privilege, 57 N.Y.U.L.Rev. 443, 490 (1982) (citing United States v. Rosenstein, 474 F.2d 705, 714 (2d Cir.1973)). See also In re Grand Jury Subpoena, 599 F.2d 504, 511 (2d Cir.1979) ("Participation of the general counsel does not automatically cloak the investigation with legal garb.").
My review of the documents at issue indicates that house counsel for defendant Phelps Dodge Refining Corporation ("PDRC") were actively involved in many facets of remediation at the Property. PDRC employees reported to house counsel and, based on those reports, counsel then frequently communicated and dealt with outside consultants on behalf of the corporation. Many of the tasks performed by counsel could have been undertaken by non-attorneys and the advice given made by an employee with no legal background. However, because the transaction was not a routine business matter and required considerable involvement with a state regulatory agency, it is clear that the subject matter was one of particular concern to the client and an area where the expectation of confidentiality arguably is greater. Thus, in situations where advice is rendered or sought which seem to touch upon sensitive issues, I have taken a broad view of legal advice in applying the privilege, in recognition of the unique role that an attorney brings to bear in imparting advice that may incidentally also involve business advice.[2]
On the other hand, the mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean that the communication is necessarily privileged. Simon v. G.D. Searle & Co., 816 F.2d 397, 403-04 (8th Cir.), cert. denied, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). The information-holder's motive for the communication, to the extent that it can be discerned from the document, thus is an important consideration. "If the information-holder will communicate with the attorney even if the privilege does not exist, or if a nonlegal objective is sufficient to stimulate communication with the attorney, then there is no reason for the privilege to attach." Sexton, 57 N.Y.U.L.Rev. at 490.
Applying these guidelines, I have set forth my determinations as to whether each document for which defendants have asserted attorney-client privilege is protected. The first table addresses the disputed documents for which defendants originally claimed the privilege, and the second table concerns the later *161 assertion of privilege. Due to the large number of documents, I will not discuss each one, but have described on the tables the reason for each determination. However, I will elaborate on several rulings which are generally representative of the bulk of the documents.
Communications from Hart & Associates or Conestoga-Rovers. Hart & Associates ("Hart") was an engineering firm recommended by the NYSDEC and hired by defendants in August, 1985 to conduct environmental studies of the soil and oversee remedial work at the Property. Conestoga-Rovers & Associates Limited ("Conestoga-Rovers") was hired as a consultant in 1989 to develop a supplementary remedial program. None of the documents between either consultant and defendants and their counsel is protected by the attorney-client privilege because neither consultant can be considered an agent encompassed by the privilege.
The attorney-client privilege may cover "communications made to agents of an attorney ... hired to assist in the rendition of legal services." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir.1989), cert. denied, ___ U.S. ___, 112 S.Ct. 55, 116 L.Ed.2d 31 (1991); United States v. Kovel, 296 F.2d 918 (2d Cir.1961). In Kovel, Judge Friendly ruled that "the attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in usable form information obtained from the client." Federal Trade Comm'n v. TRW, Inc., 628 F.2d 207, 212 (D.C.Cir.1980). The Kovel court "analogized the role of the accountant to that of a translator who puts the client's information into terms that the attorney can use effectively." Id.
As explained in 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 503(a)(3)[01] at 503-31 to 38 (1993), the application of the privilege in Kovel is now recognized as extending to representatives of the attorney, such as accountants; administrative practitioners not admitted to the bar; and non-testifying experts. See also Edward M. Spiro & Caroline Rule, `Kovel' Experts Cloaked by Attorney-Client Privilege, N.Y.L.J., Feb. 22, 1994, at S1, S10 (privilege has been applied to "communications with a psychiatrist assisting a lawyer in forming a defense, a bail bondsman, and a polygraph operator").
Neither Hart nor Conestoga-Rovers fall within any of these recognized categories of representatives or agents for purposes of the attorney-client privilege. They cannot be characterized as administrative practitioners[3] since they were not employed by Phelps Dodge attorneys specifically to assist them in rendering legal advice. In fact, they were hired by defendants to formulate a remediation plan acceptable to the NYSDEC and to oversee remedial work at the Property. Their function was not to put information gained from defendants into usable form for their attorneys to render legal advice, but rather, to collect information not obtainable directly from defendants. Nor could the consultants be characterized as non-testifying experts. Earlier in this case, when defendants attempted to shield from discovery studies prepared by Conestoga-Rovers and Gitlen for other clients, defendants denied that these consultants served as experts and stated that if either consultant testified at trial, it would do so as a factual witness and not as an expert.
Courts that have considered the application of the attorney-client privilege to independent outside consultants have been cautious in extending its application. See discussion in TRW, 628 F.2d at 212. In TRW, the court ruled that documents prepared by a consultant engaged by defendant "to prepare a study of the company's complex computerized credit reporting system," 628 F.2d at 209, "might warrant application of an attorney-client privilege," but ultimately did not uphold the privilege:
Where, as here, we have not been provided with sufficient facts to state with reasonable certainty that the privilege applies, this burden is not met. As noted earlier TRW's claim lies at an outer and indistinct boundary of the law of attorney-client privilege. *162 Particularly where this is so, it is our responsibility to tread carefully, with as much precision as the facts before us permit.
Id. at 212.
Defendants have made a claim of attorney-client privilege that goes well beyond the "outer boundary" of the privilege. Unlike the computer study at issue in TRW, which arguably was undertaken to assist the attorneys in litigation, the studies and work performed by Hart and Conestoga-Rovers clearly served other purposes. Moreover, these consultants based their opinions on factual and scientific evidence they generated through studies and collected through observation of the physical condition of the Property, information that did not come through client confidences. Such underlying factual data can never be protected by the attorney-client privilege and neither can the resulting opinions and recommendations. There are few, if any, conceivable circumstances where a scientist or engineer employed to gather data should be considered an agent within the scope of the privilege since the information collected will generally be factual, obtained from sources other than the client.
Because employees of Hart and Conestoga-Rovers are outside the attorney-client privilege, documents they have prepared are discoverable. In re Grand Jury Matter, 147 F.R.D. 82, 85 (E.D.Pa.1992). As discussed below, drafts of documents sent to third parties, including those sent to counsel for comments, are also not privileged.
Defendants have not presented any specific substantiation for their claim of attorney-client privilege here other than to argue sternly that communications between house counsel and the consultants should be considered privileged because counsel performed a legal role. This, of course, misses the point since the problem lies with the characterization of the consultant as an agent for purposes of the attorney-client privilege and not with the role of house counsel. While communications between counsel and Hart or Conestoga-Rovers might be protected in a work product context, defendants have abandoned their claim of protection under this doctrine.[4]
In reaching my conclusions about defendants' documents, I have specifically reviewed them to determine if any documents, particularly those containing attorney comments, did not disclose a client confidence or legal advice rendered. I find that none of the documents revealed any confidential communications by the defendants or their attorneys to the consultants. The notations by attorneys were not substantive and consisted mainly of editorial comments or inserts providing factual background, hardly a surprising result in light of the scientific nature of the documents involved. Because of the necessarily limited legal role that an attorney has in commenting on documents prepared by scientific consultants, denying application of the attorney-client privilege in this context should not adversely affect either the use of consultants or inhibit communications between the consultants and the client or counsel.
Drafts of documents. Most drafts were of letters or other documents to be submitted to third parties. Although most drafts contained handwritten comments of house counsel, the fact the document is sent to a third party ordinarily removes the cloak of confidentiality necessary for protection under the attorney-client privilege. P. *163 & B. Marina, Ltd. Partnership v. Logrande, 136 F.R.D. 50, 56 (E.D.N.Y.1991), aff'd, 983 F.2d 1047 (2d Cir.1992) (citing United States v. (Under Seal), 748 F.2d 871, 876 (4th Cir. 1984)). The drafts may be considered privileged if they were prepared with the assistance of an attorney for the purpose of obtaining legal advice and/or contain information a client considered but decided not to include in the final version. Allegheny Ludlum Corp. v. Nippon Steel Corp., 1991 WL 61144 at *5 (E.D.Pa. Apr. 15, 1991). Most of the drafts do not contain sufficient information for determination to be made whether a confidential communication was eliminated from the final document. Defendants have the burden on the issue, and have made no such showing. Since defendants have not met their burden of establishing the privilege as to these drafts, they must all be disclosed. The one exception is document 56 where the client indicates in a confidential note the changes to be made in the final document. On the other hand, document 148 is a prime example of a draft with attorney notes not within this privilege since the attached final version sent to a third party contains the revisions made on the draft.
In addition, no privilege applies to the cover memoranda or attachments which were prepared by third parties such as memoranda or attachments to draft documents 80 and 268.
Communications between Phelps Dodge employees and Phelps Dodge attorneys. In many instances, defendants have invoked the privilege simply because an attorney is mentioned or because a memorandum contains a handwritten note from an attorney (principally Steve Crozier), but without regard to the nature of the communications. As I advised defendants during a telephone conference held on February 9, 1994, many documents clearly did not contain confidential client communications or legal advice. Defendants' counsel admitted that they had, out of caution to avoid waiver of the privilege, broadly asserted the privilege whenever a document contained a reference to or involved an attorney. I assured defendants that disclosure of such documents would not constitute a waiver of the privilege as to the contents of any protected communication and invited defendants to reconsider their privilege list. Defendants never revised their privilege list to delete such documents. As a result, I found a large number of documents not to be protected by the attorney-client privilege because they contained no confidential communications.
Examples of documents from an employee to house counsel which are not privileged include document 4, which is merely a transmittal letter, and documents 40 and 106, which summarize meetings attended by employees of defendants and others. An example where the privilege has been upheld is document 293 because the handwritten memorandum contains client confidences and seeks legal advice.
The privilege has been upheld for documents sent by house counsel where the documents reveal client confidences or provide legal assistance, such as the legal memorandum from Tubman to Bell, containing legal advice (document 207). The privilege has not been upheld for documents such as 29, because this letter transmits only factual information or matters of public record. A large number of documents not found to be privileged are documents from third parties which contain notations from Steve Crozier which neither contain legal advice or a client confidence. These include documents 9 (request to talk about a certain letter), 16 (note to set up a meeting), 138 (relates facts) and 336 (requests comments from Konerko, then President of PDRC).
Communications among Phelps Dodge employees, where attorneys have been copied. The attorney-client privilege would apply to such documents if they contained communications intended to be confidential and a dominant purpose of the communication was to obtain legal advice. I found no documents qualified for the privilege because all were written for some other purpose than to seek legal advice and would have been prepared whether or not the attorney was sent a copy. Examples include a memorandum summarizing a meeting among third parties (292) or a report regarding actions to be taken (390) or matters involving third parties (62). A corporation cannot be permitted *164 to insulate its files from discovery simply by sending a "cc" to in-house counsel.
Handwritten notes of Scott Crozier. Some notes, such as document 118, apparently do not contain legal advice, since it simply identifies the persons the attorney talked to about the letters. Documents 81, 262 and 280 are notes of conversations with unspecified persons who may or may not be clients and seem to contain factual information rather than any client confidence. Since there is no evidence that these notes are of privileged communications with clients, defendants have failed to meet their burden of proving the elements of the privilege. Sobol v. E.P. Dutton, Inc., 112 F.R.D. 99, 104 (S.D.N.Y.1986).
Inventory of documents in files. While the inventories in documents 120 and 121 themselves are not privileged, they contain summaries of documents, some of which are privileged in document 121. Both documents should be produced, but the references to privileged documents in 121 may be redacted.
Communications with Outside Counsel. Goldfarb & Fleece were retained by PDRC to assist in lobbying for state legislation for water rights in connection with the Property. Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege. For example, in document 44, which is a letter from house counsel to Goldfarb, the communication is not privileged since the letter simply describes the current status of certain matters to disclose in lobbying efforts and specifically in response to concerns raised by a legislator. See North Carolina Electric Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511, 517 (M.D.N.C.1986). Since this communication contemplates disclosure to a third party, it falls outside the bounds of this privilege.

Plaintiff's Claim of Executive/Deliberative Process Privilege
The executive/deliberative process privilege applies to "all material reflecting the actual pre-decisional, mental, or deliberative process  inter- and intra-governmental evaluations, expressions of opinion, and recommendations on policy and decision-making matters." United States v. Hooker Chemicals & Plastics Corp., 114 F.R.D. 100, 102 (W.D.N.Y.1987). As courts have recognized, the protection of pre-decisional intragovernmental opinions promotes the "free flow of ideas among government officials" necessary for effective governing. In re Franklin National Bank Securities Litigation, 478 F.Supp. 577, 580 (E.D.N.Y.1979); Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939 (Ct.Cl.1958) (Justice Reed, sitting by designation). The privilege is designed to "safeguard the quality and integrity of governmental decisions." Hopkins v. United States Dep't of Hous. & Urban Dev., 929 F.2d 81, 84 (2d Cir.1991).
As is the case with respect to other privileges, the burden of justifying application of the executive/deliberative process privilege falls upon the party seeking to invoke it. King v. Conde, 121 F.R.D. 180, 189 (E.D.N.Y.1988) (citing Von Bulow v. Von Bulow, 811 F.2d 136, 144 (2d Cir.1987)). Also, this privilege, as well as other privileges, cannot be "expansively construed, for they are in derogation of the search for truth." United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974); Mobil Oil Corp. v. Dep't of Energy, 102 F.R.D. 1, 4 (N.D.N.Y.1983).
Documents qualifying under this privilege must be "predecisional" and relate to the deliberative process. Hopkins, 929 F.2d at 84. Only documents which are prepared to assist a decision-maker in arriving at a decision are privileged. Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975); Resolution Trust Corp. v. Diamond, 137 F.R.D. 634, 640 (S.D.N.Y.1991). I find that a few of the documents fail to meet these requirements because they pertain to purely factual materials, Environmental Protection Agency v. Mink, 410 U.S. 73, 89, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973), or do not concern the formulation of policy. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151-52, 95 S.Ct. 1504, 1516-17, 44 L.Ed.2d 29 (1975); Mobil Oil Corp., 102 F.R.D. at 5. However, in light of my other rulings below, it is unnecessary to consider this element of *165 the privilege further other than to point out one category of documents which clearly does not come within the contemplation of this privilege.
Documents 126, 127, 130 and 142 concern plaintiff's efforts to respond to inquiries from Senator Pryor regarding the excessive costs incurred by the Postal Service in acquiring the Property. The reasons why the plaintiff seeks to prevent disclosure of these documents is apparent, but the basis for assertion of the privilege is not. These documents have nothing to do with the formulation of any decision or policy. The only "deliberations" involved are those of Postal Service officials discussing ways to respond to a potentially embarrassing Congressional inquiry. The tactical maneuvers of an agency in responding to a congressional inquiry are simply not the sort of executive actions that should be protected under the deliberative privilege.
Since the executive/deliberative process privilege is a qualified privilege, the determination whether to uphold the privilege must be made only after weighing the various competing interests for and against disclosure. In re Franklin National Bank, 478 F.Supp. at 582. A starting point for analysis are the criteria set forth in Judge Weinstein's decision in Franklin National Bank. 478 F.Supp. at 583:
1) the relevance of the evidence to be protected; 2) the availability of other evidence; 3) the "seriousness" of the litigation and the issues involved; 4) the role of the government in the litigation; and 5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.
Hooker, 114 F.R.D. at 102. This list is not intended to be exhaustive and the applicable factors and weight to be given will vary from case to case. King v. Conde, 121 F.R.D. 180, 190-91 (E.D.N.Y.1988); Grossman v. Schwarz, 125 F.R.D. 376, 382 (S.D.N.Y.1989); Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D.Pa.1973). Judge Weinstein suggests in King further factors that are applicable here, including the importance of the information to a litigant's case and strength of that litigant's case. 121 F.R.D. at 194-95.

Application of the balancing test.
As defendants point out, the affidavit of Philip E. Wilson fails to specify the harms that would result from disclosure or even to identify the information that is supposedly privileged. Mr. Wilson only claims that disclosure would "inhibit the candor of Postal Service employees in making recommendations to their superiors or in their superiors' frank discussion of these recommendations." While I agree with defendants that the assertion is conclusory and states the obvious, this may not be ground in itself to refuse application of the privilege outright.[5] The lack of specificity is simply another factor to weigh, while the absence of a showing of specific and substantial harms would mitigate against upholding the privilege. Grossman, 125 F.R.D. at 383.
The plaintiff's contention that disclosure would chill intra-agency discussions overstates the harm. In re Subpoena Duces Tecum Served upon the Office of the Comptroller of the Currency, 151 F.R.D. 1, 3 (D.D.C.1992). As Judge Weinstein noted in Franklin National Bank, the balancing of interests must be made anew in each case in which the privilege is asserted. A single instance of disclosure does not mean that disclosure will be ordered in all circumstances. 478 F.Supp. at 585. In addition, there is no empirical data presented to show that disclosure will result in the asserted harm of stifling candor. Courts considering this issue in the context of civil rights actions against police officers have concluded that fear of disclosure is likely to increase rather *166 than diminish candor. King, 121 F.R.D. at 193; Kelly v. San Jose, 114 F.R.D. 653, 665 (N.D.Cal.1987). Because the institutional interests and issues here are less controversial than those in civil rights cases, the possibility that disclosure would have a chilling effect should be even more remote.
Plaintiff's other arguments against disclosure do not address the harm of disclosure, but rather only the status of the parties and issues and the absence of an overriding need for disclosure. Plaintiff offers the myopic view that the information sought is not relevant to the remediation issue. But there are other issues in this case, some of which relate to the defendants' case and include whether plaintiff has used remediation as a pretext to avoid the contract or has acted in good faith. Because plaintiff's state of mind is critical to these defenses, documents underlying its deliberations regarding the Property may be highly probative. Notwithstanding plaintiff's contention (again conclusory and without specifics) that the information is available from other sources, it is precisely because of the nature of the deliberative process privilege that documents falling within its scope may shed more light on plaintiff's intentions.
However, plaintiff's motives become an issue only after it acquired the Property or at least exercised its option to do so on September 16, 1986. Therefore the documents prepared prior to this date are not relevant and need not be disclosed.
I note that plaintiff may be able to prove at trial that the good faith defense may simply be defendants' ploy to diffuse attention from the fact that they have failed to meet contractual obligations. While this is a factor weighing against disclosure, it is far outweighed by the overriding interest in truth-finding at trial. Since defendants have already survived plaintiff's motion for partial summary judgment and this case is almost ready for trial, it makes little sense to deny defendants this one last area of information, particularly since the reasons for non-disclosure are weak.
A further consideration is the government's role in this case. As the plaintiff correctly notes, the fact that the Postal Service is a litigant is not determinative. What is significant, and is the most important factor here, is that this case is essentially a commercial dispute. The underlying transaction involves the sale of a property, a commonplace commercial transaction that does not implicate any policy-making, regulatory or other uniquely governmental activity or function. No factors are present to transform the determination to acquire the Property into one involving important governmental policies and interests, such as a national security interest in a defense contract, an interest in promoting equal employment in connection with construction contracts, or special law enforcement needs in certain cases. The Postal Service is not ordinarily in the business of acquiring real estate and when it does so, its concerns are like those of any other buyer of commercial real estate  to get value for its money. In the absence of other overriding governmental interests, the government as buyer under a contract of sale should not have an advantage over other commercial actors. With respect to discovery, a governmental litigant should not be armed with the deliberative process privilege as a shield to prevent disclosure to adversaries who lack such protection, where the context is (as here) merely commercial.
As a final point, although "this action does not involve issues of great public concern," as plaintiff correctly notes, the applicable public concerns also weigh in favor of disclosure. The question of toxic waste disposal is one that has increasingly required the attention of government. While the Postal Service's actions in this case with regard to the toxic waste at issue ultimately may prove to be less than exemplary, full airing of such issues is likely to produce a public benefit in handling similar transactions in the future.
In summary, I find that the factors in favor of disclosure outweigh the need for secrecy in this case.

CONCLUSION
Plaintiff's motion to compel production of documents to which defendants have asserted an attorney-client privilege is granted in part and denied in part. Defendants must *167 produce within three (3) business days the documents specified in the two tables attached as appendices.
Defendants' motion to compel production of documents to which plaintiff has asserted an executive/deliberative process privilege is also granted in part and denied in part. Plaintiff is directed to produce within three business days the following documents numbered on its privilege log: 76, 81, 82, 85, 87, 89, 95, 100, 115, 123, 126, 127, 130, 133, 138, 141, 142, 150, 155, 169, 181, 186, 189, 191, 192, 254 and 256.
SO ORDERED.

 TABLE 1
 Documents for which defendants originally
 asserted attorney-client privilege
------------------------------------------------------------------------------------------------------------------
 Document Determination Rationale
------------------------------------------------------------------------------------------------------------------
4. Letter  Crozier to Bernstein Not privileged. No client confidences disclosed
of Skadden, Arps, dated  simply a transmittal
8/22/91 attaching letter letter.
from Konerko to Coe dated
7/26/91 and letter from Coe
to Konerko dated 8/7/91
------------------------------------------------------------------------------------------------------------------
9. Letter  Coe to Konerko Not privileged. No client confidence disclosed
dated 4/23/91 attaching draft in memorandum.
executive summary with Letter is from Postal Service.
handwritten notes and Memorandum
from Konerko to
Judd dated 4/19/91
------------------------------------------------------------------------------------------------------------------
16. Memorandum  Gitlen Not privileged. No confidence disclosed. No
to Crozier, Bernstein of legal opinion sought or given.
Skadden and Rovers of Conestoga-Rovers Distributed to Conestoga-Rovers.
9/6/91
------------------------------------------------------------------------------------------------------------------
19. Draft letter  Konerko Not privileged. Draft of document to third
to Coe 7/7/92 party.
------------------------------------------------------------------------------------------------------------------
27. Memorandum  Mendola Privileged. Seeks legal advice. Contains
to Crozier; cc: Whisler, client confidence.
Konerko, Haase 11/1/88
------------------------------------------------------------------------------------------------------------------
29. Letter  Whisler to Not privileged. Not confidential. Letter
Munroe enclosing summary states that information is a
of status of Laurel Hill by matter of public record.
Crozier 9/14/88
------------------------------------------------------------------------------------------------------------------
31. Memorandum  Crozier Privileged. Intended to be confidential.
to Whisler on current status
of Laurel Hill 8/8/88
------------------------------------------------------------------------------------------------------------------
37. Memorandum  Crozier Not privileged. Redraft of Hart letter with
to Konerko, cc: Kimball, handwritten comments of
Mendola, Whisler, attaching Crozier. Hart is not covered
redraft of letter from Hart to by privilege. No confidences
Hammond of DEC; cc: or legal advice.
Kimball, Mendola, Whisler
7/20/88
------------------------------------------------------------------------------------------------------------------
38. Same as document Not privileged. See above.
# 37, but Whisler's copy with
his handwritten notes.
------------------------------------------------------------------------------------------------------------------
44. Letter  from Crozier to Not privileged. Letter dated 6/28/88 is from
Lubin of Goldfarb & Fleece house counsel to outside attorneys
dated 6/28/88, cc: Konerko, who are lobbyists
Rice, Neubeck, attaching letter and did not render legal services
from Anne of Hart to covered under privi-
------------------------------------------------------------------------------------------------------------------

*168
Evans of C.T. Male dated lege. Attachments all involve
2/12/88, letter from Knizek to third parties not covered
Neubeck dated 2/5/88, letter by the privilege.
from Anne to Knizek dated
2/22/88, and letter from Knizek
to Neubeck dated 3/31/88
45. Memorandum  Crozier Memorandum dated 5/18/88: Memorandum dated 5/18/88
to Judd dated 5/20/88, cc: privileged. Memorandum constitutes legal advice.
Whisler, Konerko, Rice, attaching dated 5/20/88: not privileged. Memorandum dated 5/20/88
memorandum from contains only factual information.
Crozier to Konerko dated
5/18/88; cc: Judd, Whisler,
Rice, Haase, Mendola with
attachments
46. Same as 5/18/88 memorandum Privileged. See above.
of document # 45
47. Memorandum  Mendola Not privileged. Factual information.
to Crozier; cc: Rice, Konerko,
Haase 5/18/88
50. Memorandum  Crozier Not privileged. Factual information shared
to Konerko; cc: Whisler with Postal Service.
4/11/88
53. Memorandum  Haase Not privileged. Factual summary.
to Crozier; cc: Konerko
3/23/88
56. Draft response by Draft: privileged. Cover Draft contains confidences.
Haase to DEC survey of remedial note: not privileged. Cover memo is simply a
action costs, with cover transmittal.
note from Crozier to
Haase 2/26/88
72. Memorandum  Haase Privileged. Contains client confidences.
to Crozier; cc: Konerko,
Mendola, Kimball 3/23/88
74. Same as second part of Privileged. See document # 45
document # 45, and document
# 46
83. Memorandum  Mendola Privileged. Seeks legal advice.
to Crozier 10/5/88
93. Handwritten memo  Not privileged. No client confidence disclosed.
Mendola to Crozier 11/21/88
106. Letter  Baughman to Not privileged. No client confidence disclosed.
Cook; cc: Bell 1/8/87
130. Memorandum  Konerko Not privileged. No client confidence disclosed.
to Crozier, Haase, Mendola,
Rice, Rochin, Whisler
2/26/88
136. Memorandum  Konerko, Privileged. Contains client confidences.
Crozier to Whisler; cc:
Judd 8/11/89
138. Memorandum  Konerko Not privileged. Discusses matters of public
to Crozier 11/9/89 information.
141. Memorandum  Mendola Memo and letter: privileged. Mendola memorandum contains
to Crozier dated 4/26/89, Information packets: not confidences. Gitlen letter
attaching letter from Gitlen privileged. gives advice. Information
of Whiteman Osterman to packets are from third
Konerko dated 4/19/89 and parties who could not qualify
information packets from potential as agents.
consultants

*169
221. Letter from Mack of Not privileged. Goldfarb & Fleece are lobbyists.
Hart to Lubin of Goldfarb & Hart is not covered by
Fleece dated 2/20/86, attaching privilege. Draft of document
draft letter from Evans, is sent to third party
Kitchel to Lubin; and drafts and waived once communicated
of contract with Postal Service to Hart.
250. Letter  Coe to Konerko Not privileged. Note reveals no client confidence
with Crozier's handwritten nor provides legal advice.
note to Gitlen 12/27/90
269. Draft of executive Not privileged. Hart is not covered by privilege.
summary with handwritten
note and fax cover sheet
from Neubeck to Crozier
5/27/88
307. Faxed draft of presentation Not privileged. Transmittal of Hart's outline.
to DEC with cover Hart not covered by privilege.
memo from Crozier to Konerko,
Haase, Mendola dated
5/23/88
333. Memorandum  Crozier Privileged. Contains client confidences
to Whisler; cc: Yearley, and legal advice.
Judd, Konerko 5/30/90
355. Letter  Crozier to Not privileged. Although it seeks legal comment,
Bernstein of Skadden and draft is of document
Gitlen of Whiteman Osterman addressed to third party.
dated 5/10/91; cc: No confidence revealed in
Whisler, Konerko, Rovers, transmittal.
attaching draft of proposed
letter to Coe from Konerko.
CR31. Letter from Pruett Not privileged. Conestoga-Rovers is not
to Rovers, Puskas of Conestoga-Rovers covered by privilege.
and Gitlen of
Whiteman, Osterman, attaching
pages of EPA proposal.
5/14/92
CR34. Letter from Gitlen Letter from Gitlen: privileged. Only letter from Gitlen contains
to Pruett; cc: Pentilchuk, Letter from Corbly legal opinion.
dated 8/2/93, attaching letter and licensing agreement:
from Corbly to Gitlen dated not privileged.
8/2/93 and licensing agreement.
 TABLE 2
 Documents for which defendants asserted
 attorney-client privilege in February 1994
 Document Determination Rationale
25. Draft letter  Hart to Not privileged. Hart is not covered by the
Knizek, Iannotti of NYSDEC, privilege.
plus attachment on
EPA Method 1312 1/6/88
32. Letter  Crozier to Jacot, Not privileged. Hart is not covered by the
cot, Neubeck of Hart; cc: privilege.
Konerko, Mendola, Haase,
Kimball 8/8/88

*170
40. Memorandum  Haase Not privileged. This is a summary of a meeting
to Crozier; cc: Whisler, attended by representatives
Konerko, Judd 7/8/88 from the Postal Service
 and the DEC. Factual information
 only. No client
 confidence disclosed.
62. Memorandum  Konerko Not privileged. No client confidence disclosed.
to Judd; cc: Crozier, Not made to obtain
Himebaugh, Haase, Mendola, legal advice. Factual information
Rice, Scanlon, Stilwell, and writer's opinion.
Whisler, Yearley 1/29/88
73. Fax cover sheet  Not privileged. Hart is not covered by privilege.
Neubeck to Crozier, dated
5/19/88, attaching DEC publication
with handwritten
notes.
80. Fax cover sheet  Neubeck Not privileged. Hart is not covered by privilege.
to Crozier, dated 7/1/88,
attaching draft letter to Jorling
of DEC and attachment.
81. Handwritten notes of Not privileged. Not proven that communication
Crozier to files 7/5/88 is with client and confidential.
84. Fax cover sheet  Urschel Not privileged. Contains no client confidences.
of Hart to Crozier, Hart is not covered by
Mendola, dated 11/23/88, attaching privilege.
handwritten notes
85. Memorandum  Neubeck Not privileged. Hart is not covered by privilege.
to Mendola, attaching
handwritten notes 11/21/88
86. Memorandum  Crozier Not privileged. Hart is not covered by privilege.
to Mendola dated 9/20/88, attaching
draft letter from
Neubeck of Hart to Knizek
of DEC dated 9/12/88
110. Letter  Crozier to Not privileged. Conestoga-Rovers is not
Puskas of Conestoga-Rovers, covered by privilege.
cc: Konerko, Rovers,
Gitlen dated 10/9/91, attaching
letter from Puskas to
Crozier dated 9/23/91 and table
115. Draft letter  Konerko Not privileged. Draft of letter to third party.
to Coe of Postal Service.
9/24/91
117. Draft letter  Konerko Not privileged. Draft to be sent to third party.
to Coe of Postal Service, Handwritten notes do
with handwriting dated not contain confidences or legal
11/7/91. 10/9/91 advice.
118. Letter  Becker of Not privileged. Letters to third parties.
Goldfarb & Fleece to Coe, Crozier notes do not contain
cc: Crozier, with handwriting legal advice or client confidences.
by Crozier and attaching
12/27/90 letter from Coe to
Konerko. 1/8/91
120. Outline or inventory of Not privileged. Summaries of documents do
documents in a file on asbestos not constitute legal advice.
issues. Labeled work No privileged documents
product. 9/4/91 covered.

*171
121. Outline or inventory of Not privileged, except for Summaries of documents do
documents in a file on contract summaries of documents not constitute legal advice.
negotiation/site remediation. found to be privileged. However, redact discussion
Labeled work product. of contents of privileged documents
9/11/91 (items 2, 3, 5, 6, 8, 9,
 10, 11, 13, 17, 20, 24, 33, 53,
 56, 64 and 70).
148. Letter  from Konerko Not privileged. Document addressed to third
to Sullivan of DEC, with parties. Draft discloses no
handwriting, and attaching client confidence.
draft of same dated 3/28/89.
4/24/89
163. Letter  from Puskas Not privileged. Conestoga-Rovers is not
of Conestoga-Rovers to Gitlen covered by privilege.
of Whiteman Osterman;
cc: Rovers, Crozier, Konerko,
attaching work plan.
3/8/90
169. Letter  from Puskas Not privileged. Conestoga-Rovers is not
of Conestoga-Rovers to Crozier, covered by privilege. Handwritten
with handwriting by comments contain no
Crozier and Mendola. confidences, no legal advice.
7/13/90
207. Notes from Bell attaching Privileged. Notes seek legal advice.
legal memorandum Memorandum provides legal
from Tubman to Bell dated advice.
6/7/85
208. Letter  Curry of Evans, Privileged. Legal advice.
Kitchel to Tubman
5/29/85
226. Handwritten memo  Not privileged. Memo contains no confidences.
Baughmann to Cook, Tubman;
cc: Bell attaching
9/17/86 Daily News article.
243. Draft of Hart remedial Not privileged. Draft with Crozier comments
action plan with cover letters of document submitted to
from Crozier to Mendola and DEC.
from Konerko to Crozier
247. Memorandum  Bennett Memo from Crozier: privileged. Memo from Bennett: neither
to Judd dated 6/4/90, attaching Memo from Bennett: party is an attorney.
memorandum from not privileged.
Crozier to Whisler dated
5/30/90
257. Letter  Puskas to Not privileged, except for Conestoga-Rovers is not
Crozier attaching letter from handwritten comment of covered by privilege, except
Puskas to Rexrode of ADT Crozier. redact handwritten comment
9/6/90 which contains legal opinion.
260. Letter  Puskas to Not privileged. Conestoga-Rovers is not
Crozier attaching response covered by privilege.
to DEC comments; cc: Rovers,
Gitlen, Konerko 5/31/90
262. Undated Crozier notes Not privileged. Not proven that communication
 is with client and confidential.
268. Three-page draft of Not privileged. Cover memoranda and attachments
meeting presentation with contain no client
handwritten notes, along confidences. Draft of document
with cover letter from Boggs sent to third party.
to Mendola, cc; Wilson, Crozier,

*172
Dean, Soukup, fax cover
sheet, phone messages and
attachments 5/25/88
280. Crozier handwritten Not privileged. Not proven that communication
notes is with client and confidential.
281. Crozier handwritten Not privileged. Hart is not covered by privilege.
notes on meeting with Hart
292. Memorandum  Haase Not privileged. Haase memorandum: neither
to Mendola, prepared at Crozier's party is an attorney;
request dated 7/12/88 see document # 40
attaching draft of document
# 40 with handwritten notes
dated 7/8/88
293. Handwritten memorandum Privileged. Contains client confidences.
 Mendola to Crozier
9/12/88
317. Same as document Not privileged. See document # 40
# 40
330. Letter  Coe to Konerko Not privileged. Notes contain no client confidences.
dated 7/31/90 with handwritten
notes attaching letter
from Cook to Coe dated
1/16/87
332. Draft letter  Konerko Not privileged, except for Draft to third party. Comment
to Coe 7/9/91 handwritten comment at contains legal opinion.
 top..
335. Draft letter from Hart Not privileged. Hart is not covered by privilege.
to Knizek, Iannotti of DEC;
with fax cover sheet and attachments
12/7/88
347. Memorandum  Crozier Not privileged. Draft of document to third
to Konerko, attaching party.
draft letter terminating
ACES contract; cc: Whisler
10/15/88
348. Draft of memorandum Not privileged. Draft of intra-corporate
 Judd to Konerko with memo between officers who
Crozier's handwritten comments are not counsel. Attorney
 comments editorial.
390. Memorandum  Konerko Not privileged. No client confidences disclosed.
to Judd dated 1/18/88; cc: No indication that
Crozier, Himebaugh, Haase, legal services were sought.
Mendola, Rice, Scanlon, Stilwell,
Whisler, Yearley, attaching
letter from Laswell
of ICF Tech. to Konerko
dated 1/18/88
414. Same as document Not privileged. See document # 260
# 260
415. Memorandum  Konerko Not privileged. This is a summary of a meeting
to Crozier, summarizing attended by representatives
meeting held on 5/16/90 from the Postal Service.
5/16/90 No client confidences disclosed.
417. Memorandum  Crozier Not privileged. Draft of document to third
to Whisler, Konerko dated party and transmittal memo.
5/6/91 attaching draft letter

*173
from Konerko to Coe dated
5/3/91 and attachment
433. Memorandum  Crozier Memorandum: privileged. Memorandum contains legal
to Van Wagoner; cc: Attachments: not privileged. advice. Attachments are to
Whisler, Konerko, enclosing third party.
original letter of transmittal
and performance and payment
bond for ACES 9/9/88

NOTES
[1] Defendants engaged in extensive dealings with the New York State Department of Environmental Conservation ("NYSDEC") from before the sale of the subject property to the present. Defendants claimed a work product privilege because they contended that they contemplated litigation with the NYSDEC during this period of time.
[2] Another way of framing the issue is that I have tended to find a dominant legal purpose in cases where the advice sought may involve both business and legal considerations. See Sexton, 57 N.Y.U.L.Rev. at 491 ("application vel non of the privilege should turn upon whether the dominant purpose of the communication is legal or nonlegal," citing Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136, 147 (D.Del.1977)). See also Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 90 F.R.D. 21, 34 (N.D.Ill.1980).
[3] The administrative practitioners generally recognized by courts are patent agents employed by patent attorneys. See Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514 (S.D.N.Y.1992).
[4] Even if defendants had not abandoned that claim, disclosure of the documents would still have been required. After further review of the documents and the letter submissions of Harry Zirlin, attorney for defendants, dated February 3, 1994, February 8, 1994 and February 9, 1994, I find that defendants have not met their burden of proving the applicability of the work product privilege. While I agree that defendants may have, at some point prior to commencement of this action, contemplated litigation with the NYSDEC, the general statements of Mr. Zirlin will not suffice to establish whether and when the work product doctrine became applicable. Other than two documents, apparently from 1991, containing summaries of documents which were labelled "Attorney Work Product", none of the documents I examined clearly indicated that litigation with NYSDEC was contemplated. It is impossible to say, on this record, that these documents were prepared in connection with possible litigation rather than for some other purpose. Several documents suggested that defendants were merely seeking to comply with the requirements of NYSDEC.
[5] I note that the privilege has been upheld even in the absence of the submission of any affidavit by the government. See Grossman, 125 F.R.D. at 383; United States v. Village of Island Park, CV-90-0992 (E.D.N.Y. Jan. 25, 1991) (the justifications given and the in camera review of the documents adequately meets the procedural requirement for invoking the privilege).

Moreover, courts which have insisted on greater specificity in affidavits ordinarily have done so because of a reluctance to conduct an in camera inspection. See e.g. Mobil Oil Corp., 102 F.R.D. at 7 & n. 4. Where the claimant's justification for invoking the privilege is insufficient, a court will ordinarily conduct in camera review. Resolution Trust Corp. v. Diamond, 137 F.R.D. at 642.